Marlin A. WILLIAMS, Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 84A05–0102–CR–67.

Court of Appeals of Indiana.

Sept. 26, 2001.

Robert D. Hepburn, Terre Haute, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Arthur Thaddeus Perry, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

Following a jury trial, Marlin A. Williams was convicted of Murder, and the trial court sentenced Williams to an enhanced sixty-year term. Williams appeals his conviction and raises the following re-stated issues for our review:

1. Whether the trial court erred when it refused to instruct the jury on the lesser-included offenses of Reckless Homicide and Involuntary Manslaughter.

2. Whether the trial court erred when it twice refused to declare a mistrial, or at a minimum question the entire jury, after a witness commented about Williams' polygraph test and a juror was later accused of misconduct.

We affirm.

### FACTS AND PROCEDURAL HISTORY

One evening, in February 1995, Williams and Darrell Criss Shepard went to a bar in Terre Haute. Williams grew angry with Shepard as the two argued over money, and he placed Shepard in a headlock and began punching him in the ribs. Following the tussle, Williams left the bar.

Later that same evening, ground-floor residents in Shepard's apartment building heard noises from upstairs near Shepard's apartment that sounded like a scuffle or someone falling down the stairs. One downstairs resident heard the commotion and saw Williams walk past his apartment window and head away from the building. Two days later, police discovered Shepard lying dead on the couch in his apartment.

The State charged Williams with Shepard's murder. During trial, a State's witness inadvertently mentioned that Williams had taken a polygraph test, and Williams moved for a mistrial. The trial court denied Williams' motion, but admonished both the witness and the jury not to consider the results or fact of the polygraph test. Near the end of the trial, Williams again moved for a mistrial after the parties discovered that a juror had discussed the case with her mother. With both sides present, the trial court questioned the juror in chambers about the alleged conversation and removed her for bias at the behest of William's attorney. The trial court, however, did not ask the remaining panel members about what, if any, comments the juror had made to them about the case. The jury later found Williams guilty of murder. The trial court entered a judgment of conviction and sentenced Williams to an enhanced sixty-year term. This appeal followed.

### DISCUSSION AND DECISION

### Lesser-included Offense Instructions

██ Williams initially argues that the trial court erred when it declined to in-

struct the jury on the lesser-included offenses of reckless homicide and involuntary manslaughter. Specifically, Williams asserts that testimony at trial regarding a scuffle between the two men was sufficient evidence from which the jury could have reasonably concluded that Williams did not possess the intent to "knowingly" kill Shepard. *See* Ind.Code § 35–42–1–1(1); Appellant's App. at 13. We do not agree.

■ Jury instructions are solely within the discretion of the trial court, and we will reverse only if the court abuses that discretion. *Young v. State*, 696 N.E.2d 386, 389 (Ind.1998). The instruction should inform the jury regarding the law applicable to the facts without misleading it and should enable the jury to understand the case and arrive at a just, fair, and correct verdict. *Id.* In considering whether error has resulted from refusing or giving a tendered instruction, the reviewing court determines whether the instruction correctly states the law, whether there is evidence in the record to support the giving of the instruction, and whether the substance of the instruction is covered by other instructions which are given. *Id.*

■ When a defendant asks the trial court to instruct the jury on lesser-included offenses, "the trial court must apply a three-part analysis: (1) determine whether the lesser-included offense is inherently included in the crime charged; if not, (2) determine whether the lesser-included of-

fense is factually included in the crime charged; and, if either, (3) determine whether a serious evidentiary dispute exists whereby the jury could conclude that the lesser offense was committed but not the greater." *Hauk v. State*, 729 N.E.2d 994, 998 (Ind.2000) (citing *Wright v. State*, 658 N.E.2d 563, 566–67 (Ind.1995)).

■ The only feature distinguishing reckless homicide and involuntary manslaughter from murder is that a lesser culpability is required to establish the commission of the lesser offenses; they are, therefore, inherently included offenses of murder. *Id.*; *See Dearman v. State*, 743 N.E.2d 757, 760 (Ind.2001). However, no serious evidentiary dispute existed concerning whether defendant committed murder or one of the lesser-included offenses because at trial he maintained that he did not kill Shepard, not that he did so recklessly or that he only intended to batter Shepard.[1] *See Whitehead v. State*, 511 N.E.2d 284, 295–96 (Ind.1987) (affirming trial court's refusal to instruct on reckless homicide and involuntary manslaughter in murder trial where defendant maintained someone else committed the crime). Either Williams was the one who knowingly killed Shepard or he was not. *Jewell v. State*, 539 N.E.2d 959, 963–64 (Ind.1989). Based on his defense, the jury could not have concluded that Williams committed reckless homicide or involuntary manslaughter and not murder. *See id.* (concerning involuntary manslaughter only).[2]

---

**1.** Murder occurs when a defendant "knowingly or intentionally" kills another human being, Ind.Code § 35–42–1–1(1), while reckless homicide occurs when a defendant "recklessly" kills another human being. Ind.Code § 35–42–1–5. Involuntary manslaughter requires that a defendant intend to batter not kill the victim. *Dearman*, 743 N.E.2d at 760.

**2.** We note that even had Williams claimed at trial that he killed Shepard with a degree of intent lower than that required for murder,

the evidence presented did not support his requested instructions on reckless homicide and involuntary manslaughter. The trial court found correctly that "there is no serious evidentiary dispute here." Transcript at 771. Dr. Roland M. Kohr, Vigo County Coroner, testified that Shepard died as a result of multiple skull fractures inflicted by repeated blows to the head with an unknown instrument, but possibly a golf club. Further, Margie Wright and Rosa Jean Poulter testified that Williams, on different occasions, stated

And, further, the evidence at trial did not support Williams' requested instructions on reckless homicide and manslaughter. The trial court, therefore, did not err when it declined to instruct the jury on reckless homicide and involuntary manslaughter.

## Motion for Mistrial

 A mistrial is an extreme remedy that should be invoked only when no other measure can rectify the situation. *Flowers v. State*, 738 N.E.2d 1051, 1058 (Ind.2000). Because the trial judge "is in the best position to gauge the surrounding circumstances of an event and its impact on the jury," a trial court's decision in determining whether to grant a mistrial is afforded great deference. *Mickens v. State*, 742 N.E.2d 927, 929 (Ind.2001) (citation omitted). Therefore, we review the trial court's decision only for abuse of discretion. *Id.*

 To prevail on appeal from the denial of a motion for mistrial, Williams must establish that the questioned conduct "was so prejudicial and inflammatory that he was placed in a position of grave peril to which he should not have been subjected." *Id.* (citation omitted). We determine the gravity of the peril by considering the misconduct's probable persuasive effect on the jury's decision, not the impropriety of the conduct. *Id.*

### A. Polygraph Test

 Williams contends that the trial court erred when it refused to grant his motion for a mistrial after a State's witness mentioned that Williams had taken a polygraph test.[3] We do not agree.

 Like the results of the test, proof of the fact that a polygraph test was taken or refused is, in the absence of a waiver or stipulation, inadmissible in a criminal prosecution. *Conn v. State*, 535 N.E.2d 1176, 1180 (Ind.1989). However, when the trial court admonishes the jury to disregard the inadmissible evidence, the prejudicial impact of the evidence may be sufficiently mitigated. *Sherwood v. State*, 702 N.E.2d 694, 698 (Ind.1998). The question of whether a defendant was so prejudiced that the admonishment could not cure the error is one that must be determined by examining the facts of the particular case. *Reese v. State*, 452 N.E.2d 936, 939 (Ind.1983). The burden is on the defendant to show that he was harmed and placed in grave peril by the denial of the mistrial motion. *Id.*

Here, Williams' mother, Janice Lee Manley, was called by the State to testify. At one point, the prosecutor asked Manley whether she recalled having "ever seen [Williams] with jeans on that the knees were worn out." Transcript at 126. Manley replied: "[t]he day he came back from the polygraph test with Rachel." Transcript at 126. The trial court then excused the jury temporarily and entertained Williams' motion for mistrial. The court denied the motion after it determined that the polygraph reference had been "inadvertent" and did not place Williams in a "position of grave peril to which he should not have been subjected." Transcript at 131. The trial court then instructed Manley not to mention the polygraph again and

---

that he had killed Shepard with a golf club and had then disposed of the golf club in the river. *See* Transcript at 585, 593. The conduct of the perpetrator was so extreme and the beating so severe that the jury could not have concluded that Williams killed Shepard recklessly or that he only intended to batter

Shepard. *See Lyttle v. State*, 709 N.E.2d 1, 3 (Ind.1999).

**3.** Prior to trial, the court granted both parties' motions in limine to exclude any evidence concerning Williams' polygraph examination.

admonished the jury to disregard Manley's mention of it. This remedy was sufficient to purge from the trial any possible peril to Williams. *See Sherwood,* 702 N.E.2d at 698 (concluding that no mistrial was warranted where trial court admonished witness and jury to disregard evidence of polygraph); *see also Carter v. State,* 512 N.E.2d 158, 165 (Ind.1987) (upholding trial court's denial of mistrial where mention of polygraph test, without disclosing test results, generated at most minimal prejudice to defendant).

In addition, we note that although Williams asserts as much, he fails to demonstrate precisely how Manley's mention of the polygraph and the trial court's decision not to grant a mistrial placed him in grave peril to which he should not have been subjected. As we stated earlier, Williams bears the burden of showing that he was harmed or placed in grave peril. *Reese,* 452 N.E.2d at 939. We find no error.

### B. Juror Misconduct

■■■■ Williams next argues that the trial court erred when it denied his motion for a mistrial after evidence surfaced that one juror had disparaged Williams during a phone conversation with her mother. Alternatively, Williams claims that even if the juror's remarks did not warrant a mistrial, the trial court committed reversible error by not questioning the remaining jurors regarding possible comments made to them by that one juror. Again, we cannot agree.

Near the close of evidence at trial, Williams presented an affidavit from Robert E. Hargis, an investigator with the Vigo County Public Defender's office. In his affidavit, Hargis stated as follows:

> I understand that Penny Dickerson ... is a juror in this case. On this date I learned from speaking with Ms. Dickerson's mother, that she has spoken with

her mother about this matter in a way that has led the mother to conclude that the juror does not like [Williams], in fairly strong terms. It was clear to me that there was a discussion about the case, but I was not present to overhear any specific comments that may be attributable to Ms. Dickerson.

Appellant's App. at 207. Both parties and the trial court questioned Dickerson in chambers about the alleged conversation. Dickerson admitted that she had talked to her mother but denied that they had talked at all about the pending case or Williams. As for having any personal feelings about Williams, Dickerson commented: "I didn't have an opinion and I haven't formed an opinion on this man as a person. I don't have one. I don't know him." Transcript at 759. Thereafter, the court admonished Dickerson to "follow [her] duties as a juror," sent her back to the jury room, and denied Williams' motion for a mistrial. The court, however, granted Williams' motion to remove Dickerson from the panel, seated the alternate juror, and instructed the jury to give no weight to the fact that Dickerson had been removed.

■■■■ Dickerson's dismissal remedied any peril to Williams occasioned by the alleged comments to her mother. To be entitled to a mistrial, Williams had to demonstrate that Dickerson's conduct was so prejudicial that it had a "probable persuasive effect on the jury's decision." *Conrad v. State,* 747 N.E.2d 575, 591 (Ind.Ct.App. 2001) (upholding trial court's refusal to grant a mistrial where juror knew victim, and endorsing its decision to replace that juror with alternate juror), *trans. denied.* Hargis' affidavit, however, does not allege that Dickerson expressed her dislike for Williams to the other jurors. Thus, even assuming Hargis' affidavit were true and

Dickerson did harbor ill will towards Williams, that, without more, does not demonstrate any prejudicial effect on the jury as a whole. Absent some evidence that Dickerson communicated her dislike for Williams to the other panel members, we will not simply impute her views to the remaining jurors. The court acted within its discretion when it denied Williams' mistrial motion.

In addition, the trial court did not err when it chose not to interview the remaining jurors collectively. Given Hargis' and Dickerson's comments, the trial court had no reason to suspect that the remaining jurors were exposed to any improper comments from Dickerson. *See Lindsey v. State*, 260 Ind. 351, 295 N.E.2d 819, 824 (1973) (holding that court must first be presented with suggestion of improper publicity to the jury).[4] Further, even if we assume, as Williams does, that evidence of one juror's misconduct raises the "suggestion" of improper publicity to the entire panel, that fact alone does not require a trial court to interrogate the jury as a group. Only where the risk of prejudice appears to be substantial, as opposed to imaginary or remote, is the court required to interrogate the jury collectively. *Id.* In this case, we cannot say that Hargis' allegations, even if true, created a substantial risk of prejudice to the entire jury. Faced with the dilemma of either accept-

ing that Dickerson had not had discussed her feelings with other panel members or of possibly prejudicing the panel by questioning all of them about any improper comments made by Dickerson, we conclude that the trial court acted within its discretion when it opted not to question the remaining panel members. *See Seeley v. State*, 544 N.E.2d 153, 156 (Ind.1989) (acknowledging similar dilemma and holding that trial court did not err in denying mistrial motion).[5]

## CONCLUSION

Because Williams maintained that he did not kill Shepard, the trial court did not err when it refused to instruct the jury on the lesser-included offenses of reckless homicide and involuntary manslaughter. In addition, we find no error in the trial court's refusal to twice grant a mistrial, as neither the statement about William's polygraph nor Dickerson's alleged comments placed Williams in a position of grave peril to which he should not have been subjected. The judgment of the trial court is affirmed.

Affirmed.

SHARPNACK, C.J., and RILEY, J., concur.

---

4. The State suggests that *Lindsey* is inapplicable to this case because it does not concern news publicity to the jury or exposure from "any outside influence." Brief of Appellee at 9. However, this court has not construed *Lindsey* so narrowly, finding the procedure set out in *Lindsey* for determining when a jury has been exposed to prejudicial influence applicable to any "adventitious, potentially influential event." *Threats v. State*, 582 N.E.2d 396, 400 (Ind.Ct.App.1991), *trans. denied.*

5. We also disagree with Williams' suggestion that the cumulative effect of Manley's testimo-

ny about the polygraph and Dickerson's comments to her mother required a mistrial. Williams implies that, regardless of whether each incident, individually, warranted a mistrial, the events together placed defendant in grave peril and required a mistrial. Williams has not cited, nor have we found a case in which the cumulative effect of two or more incidents, although insufficient on their own, together generated the type of peril necessary for a mistrial. In any event, this is not such a case.