Damian HARRIS, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 02A03–0310–CR–414.

Court of Appeals of Indiana.

March 28, 2005.

Michelle F. Kraus, Fort Wayne, IN, Attorney for Appellant.

Stephen R. Carter, Attorney General of Indiana, Justin F. Roebel, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

**OPINION**

HOFFMAN, Senior Judge.

Defendant-Appellant Damian Harris appeals his conviction of felony murder, Ind. Code § 35–42–1–1. We affirm in part, and reverse and remand in part for a new sentencing consistent with this opinion.

Harris presents four issues for our review which we restate as:

I. Whether the juvenile court erred by denying Harris' motion to dismiss the State's motion for waiver of juvenile jurisdiction.

II. Whether the trial court erred by denying Harris' motion for mistrial.

III. Whether the trial court erred by applying an improper aggravating circumstance in sentencing Harris.[1]

---

1. Harris actually alleges that his sentence is manifestly unreasonable. Effective January 1, 2003, Indiana Appellate Rule 7(B) no longer contains the phrase "manifestly unreasonable." It now provides that we "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." App, R. 7(B). Yet, although Harris labeled the issue as one concerning a manifestly unreasonable sentence, he makes no argument to that effect. Rather, his claim is that the trial court used an improper aggravating factor and that the court did not assign appropriate weight to the

IV. Whether Harris' sentence violates his constitutional rights as set forth in *Blakely v. Washington.*

When Harris was just fifteen years old, he attempted to rob a locally owned market. He failed in his endeavor to obtain money; however, as Harris was exiting the market, he entered into a struggle with the owner of the market, whom Harris shot and killed. The State filed a delinquency petition based upon Harris' acts that, if committed by an adult, would be the offenses of murder, felony murder, and attempted robbery. The State later filed a motion for waiver of juvenile jurisdiction, which the juvenile court granted. Following a jury trial in adult criminal court, Harris was found guilty of felony murder and attempted robbery. The trial court sentenced Harris to imprisonment of sixty-five years for the conviction of felony murder and vacated the conviction of attempted robbery. It is from this conviction and sentence that Harris now appeals.

Harris first contends that the State's delay in filing a delinquency petition and requesting a waiver of juvenile jurisdiction caused a denial of his due process rights. He suggests that his waiver into adult court not only reduced the court's options for his placement but also reduced his chances of being successfully rehabilitated. Therefore, Harris maintains that his motion to dismiss the State's petition to waive juvenile jurisdiction should have been granted.

█ We first note that in order to avoid waiver of the issue, a defendant must raise a challenge to the timeliness of his prose-cution by a motion to dismiss prior to the conclusion of trial. Ind.Code § 35–34–1–4(a)(8) and (b). In the present case, Harris has complied with this requirement. Further, a defendant has the burden of proving by a preponderance of the evidence every fact essential to support a motion to dismiss an information. Ind. Code § 35–34–1–8(f). Thus, on appeal, the defendant is appealing from a negative judgment, and we will reverse the trial court's ruling only if the evidence is without conflict and leads inescapably to the conclusion that dismissal was proper. *Perkins v. State*, 812 N.E.2d 836, 839 (Ind. Ct.App.2004).

█ Generally, criminal charges filed within the statute of limitations are considered timely. *Johnson v. State*, 810 N.E.2d 772, 775 (Ind.Ct.App.2004), *trans. denied*, 822 N.E.2d 974. Nevertheless, even where charges are brought within the statutory period, undue delay in filing charges that causes prejudice to the defendant may constitute a violation of the due process rights of the defendant. *Patterson v. State*, 495 N.E.2d 714, 718 (Ind.1986). However, the mere passage of time is not presumed to be prejudicial, and the burden is on the defendant to show that the delay was unduly prejudicial by making specific and concrete allegations of prejudice that are supported by the evidence. *Allen v. State*, 813 N.E.2d 349, 366 (Ind.Ct.App. 2004), *trans. denied*, 822 N.E.2d 980. In other words, "if the prosecution deliberately utilizes delay to strengthen its position by weakening that of the defense or otherwise impairs a defendant's right to a fair trial, an inordinate pre-indictment delay

mitigating factors. Thus, we need only discuss these latter issues. *See Simms v. State*, 791 N.E.2d 225, 230 (Ind.Ct.App.2003) (defendant's failure to cite authority and to make cogent argument on appeal results in waiver of the issue); Ind. Appellate Rule 46(A)(8)(a). However, we further limit our review of Har-ris' sentence to the single issue of the court's use of an improper aggravating factor because, based upon our review of Harris' sentence under *Blakely* in Issue IV, we need not address the remaining issue regarding the mitigating circumstances found by the court.

may be found to violate a defendant's due process rights." *Johnson,* 810 N.E.2d at 775. Therefore, to obtain relief, the defendant must show that: (1) he suffered actual and substantial prejudice to his right to a fair trial and (2) the State had no justification for the delay. *Id.; see also Allen,* 813 N.E.2d at 366.

In Indiana, a prosecution for murder may be commenced at any time. Ind.Code § 35–41–4–2. Thus, Harris' argument centers around what he maintains is the unjust delay of charges being filed rather than an issue of the expiration of the statute of limitation. Specifically, it is the State's delay in obtaining Harris' fingerprints, with which Harris takes exception. A look at the timeline of the relevant occurrences is helpful to our discussion. The offenses in this case occurred on February 21, 2000. In their joint stipulation of facts for purposes of the hearing on Harris' motion to dismiss, the parties agree that sufficient probable cause existed on May 3, 2000 for the State to obtain the fingerprints of Harris. On November 6, 2001, the State obtained a search warrant requesting Harris' fingerprints. Soon thereafter, on December 18, 2001, the State filed a delinquency petition, and the motion for waiver of juvenile jurisdiction was filed on January 3, 2002.

Harris argues that the delay between the existence of probable cause to obtain his fingerprints on May 3, 2000 and the request for the search warrant on November 6, 2001 unduly prejudiced him because his increase in age during that time period adversely affected his options for placement, as well as his chance at rehabilitation. He avers that it is more difficult to find placement for a 17–year–old delinquent where the offense is murder than it is for a 15–year–old delinquent with the same offense. Additionally, Harris claims that the younger the defendant is when

rehabilitation is commenced, the better the chance of success. He claims this passage of time violated his due process rights.

Harris' argument is based upon a hypothetical "lost opportunity" rather than actual and substantial prejudice. At the hearing on his motion to dismiss, Harris called a placement officer to testify on his behalf. The placement officer testified regarding placement of a hypothetical 15–year–old delinquent adjudicated for murder; however, the testimony was not specific to the placement of Harris and his particular circumstances. The placement officer testified that a juvenile must apply and be accepted to a facility and that only a few facilities are willing to take juveniles adjudicated of murder. Harris' witness further stated that each facility reviews the information submitted to them and decides whether to accept the juvenile and that there are no guarantees on acceptance. Although the witness testified that the facilities generally would not take older juveniles, he also stated that he had never placed a juvenile adjudicated with murder at any of the three facilities he mentioned in his testimony.

Additionally, Harris called a child psychologist to testify on his behalf. The psychologist stated that there are more placement options for a 15–year–old than there are for a 17–year–old and that the younger the age at which rehabilitation begins, the better chance of success. However, this testimony, like that of the placement officer's, was not specific to Harris and his situation. Further, on cross-examination, the witness agreed that there was no guarantee of success when rehabilitation was commenced earlier.

Harris' argument assumes that (1) he would have been placed immediately and (2) the State would not seek waiver of juvenile jurisdiction if Harris was younger, or, stated another way, that the State

would not have sought waiver if the charges had been filed when Harris was younger. First, we note that Harris was already 15 years old at the time of the crime. Given reasonable time for investigation, court hearings and obtaining placement, it is utterly feasible that Harris would be 16 years old at the time of placement. This is true especially in the instant case where results from DNA testing that could have tied Harris to the crime were first received in 2001, after Harris had turned 16. Therefore, Harris' argument regarding placement of a 15–year–old versus that of a 17–year–old is a bit disingenuous.

Moreover, the State clearly confirmed at the hearing on Harris' motion to dismiss that it is the policy of this particular prosecutor's office that a waiver be requested in any juvenile case where the offense is murder and that the office has requested waiver in cases where the juvenile was younger than Harris. Thus, Harris' assertions are based completely in speculation, and he has made no showing that his ability to defend his case was harmed. He neither provides proof that he could have actually been accepted into the programs to which he refers nor that had his rehabilitation started sooner it would have been successful or even that rehabilitation was possible in his case. In short, Harris has failed to show that he suffered actual and substantial prejudice to his right to a fair trial.

 Likewise, Harris has failed to show that the delay was inexcusable. We are mindful that prosecutors are not under a duty to bring charges as soon as probable cause exists. *Allen,* 813 N.E.2d at 368. Furthermore, a prosecutor is vested with broad discretion in the performance of his duties, and such discretion includes the decision of whether and when to prosecute. *Id.* As found by the trial court in its findings of fact and conclusions of law, the delay involved was a maximum of 159 days. This calculation is derived from the timeline of the case in the parties' joint stipulation of facts. On August 25, 2000, a search warrant was issued for blood, hair, and saliva samples from Harris. The search warrant did not include fingerprints. The parties agree that at the time this search warrant issued, probable cause existed to request Harris' fingerprints as well. As the stipulation of facts shows and as the trial court found, the last of the DNA testing results using Harris' blood, hair and saliva samples were returned on May 25, 2001. In October 2001, three individuals in the prosecutor's office independently reviewed the case and determined that Harris' fingerprints should be acquired for comparison purposes. We agree with the reasoning of the trial court that "[h]ad the fingerprint evidence been asked for and secured pursuant to the Search Warrant Affidavit of August 25, 2000, the Prosecuting Attorney, in order to properly complete the case, may wisely have waited for the lab report of May 25, 2001, before making any final charging decision with regard to [ ] Damian Harris." Findings of Fact and Conclusions of Law of Trial Court, Appellant's Appendix at 64. Thus, the trial court calculated the delay as the period from May 25, 2001 (the last date when DNA testing results were received) to the last day of October 2001 (we are not given a specific day, but it is the month in which the prosecutor's office determined the need to request Harris' fingerprints), which amounts to 159 days.

Moreover, Harris concedes in his brief that "there is no evidence that the State of Indiana intentionally or deliberately utilized delay to impair [Harris'] right to a fair trial." Appellant's Brief at 12. Even at the hearing on his motion to dismiss, Harris' counsel stated that Harris was "not in any way saying that the [State] was

intentionally delaying this for tactical purposes." Tr. at 22. In addition, the State acknowledged at the hearing that it was a mistake by its office that there was such a delay. However, the State further explained that it was not intentional and that it was not done in order to affect Harris' rights. Tr. at 27–28. Thus, we conclude that this period of delay was relatively short and, as both parties agree, was not motivated by a desire to gain a tactical advantage. Harris has failed to show the delay in this case was unjustified.

■ Harris next avers that the trial court erred when it denied his motion for mistrial. After jury deliberations had commenced, the court was alerted to the fact that the search warrant to obtain Harris' fingerprints, which was not entered into evidence, had been sent to the jury room with the jury when it retired to deliberate. Harris moved for a mistrial based upon this occurrence, and the trial court denied the motion.

■ A mistrial is an extreme remedy warranted only when no other curative measure will rectify the situation. *Donnegan v. State*, 809 N.E.2d 966, 972 (Ind.Ct. App.2004), *trans. denied*, 822 N.E.2d 972. The grant of a mistrial is a determination within the trial court's discretion, and we will reverse its decision only for an abuse of that discretion. *Id.* We give great deference to the trial court's decision, as it is in the best position to gauge the circumstances and the probable impact on the jury. *Id.* To prevail on appeal from the denial of a motion for mistrial, the defendant must establish that the questioned information or event was so prejudicial and inflammatory that he was placed in a position of grave peril to which he should not have been subjected. *Williams v. State*, 755 N.E.2d 1128, 1132 (Ind.Ct.App.2001). The gravity of the peril is determined by

considering the misconduct's probable persuasive effect on the jury's decision. *Id.*

■ Further, the proper inquiry when a jury has been exposed to potentially improper and prejudicial information is set out in *Lindsey v. State*, 260 Ind. 351, 295 N.E.2d 819 (Ind.1973) and its progeny. Although *Lindsey* dealt with a prejudicial newspaper article, we have since determined that the procedure is equally applicable whenever a jury has been exposed to any potentially influential event. *See Threats v. State*, 582 N.E.2d 396, 400 (Ind. Ct.App.1991). Thus, pursuant to *Lindsey*, when the trial court is presented with the possibility of the jury being exposed to potentially prejudicial information, it must first make a threshold determination of whether there is an actual likelihood of prejudice. *Flowers v. State*, 738 N.E.2d 1051, 1057–58 (Ind.2000). If " 'the risk of prejudice appears substantial, as opposed to imaginary or remote' " then the court must " 'interrogate the jury collectively to determine who, if any, has been exposed' " and take additional remedial action. *Id.* at 1058 (*quoting Lindsey*, 260 Ind. at 358–59, 295 N.E.2d at 824). Absent a showing of the risk of substantial prejudice, the trial court has no responsibility to engage in a collective interrogation. *Id.; see also Williams*, 755 N.E.2d at 1134.

Here, the record shows that the trial judge received a call from her court reporter indicating that the jury foreman had handed the bailiff a document that had been mixed in with all of the trial exhibits but which had not been admitted into evidence. The document was the search warrant affidavit and search warrant signed by a magistrate for the seizure of Harris' fingerprints. The trial judge and counsel met on the record to discuss the situation, at which time defense counsel moved for a mistrial. After considering the informa-

tion, the trial court denied counsel's motion.

Harris claims that he was prejudiced by the jury's access to the search warrant because of the difference in the State's burden for obtaining a search warrant based upon probable cause and its burden for obtaining a guilty verdict by proof beyond a reasonable doubt. Further, he asserts that the warrant contained a summary of Antonio Johnson's statements to police which could have lent credence to his testimony at trial as a State's witness. As an additional contention, Harris baldly alleges that the trial court failed to follow the *Lindsey* procedure.

First, we note that both parties agree that the jury had already been informed during the trial about the court-issued search warrant for Harris' fingerprints. Therefore, the existence of the search warrant and its purpose was not new information to the jury. Additionally, the jury was instructed on the State's burden to prove Harris' guilt beyond a reasonable doubt, as well as the definition of this term. *See* Final Instructions Nos. 2, 3, 4 and 13, Appellant's Appendix at 358, 359, 360, and 371. Further, the court instructed the jury that certain exhibits may not have been admitted into evidence and that they were neither to consider nor concern themselves with those exhibits. *See* Final Instruction No. 13, Appellant's Appendix at 372–73. The court also instructed the jury to disregard any and all information that was not given in their presence and admitted by the trial court. *See* Final Instruction No. 13, Appellant's Appendix at 373. Furthermore, the summary of Johnson's statements to police that were contained in the warrant mirrored the information he presented in his testimony at trial where the defense had the opportunity to cross-examine him in front of the jury and, in fact, as Harris points out in his brief, "took [him] to task on cross examination." Appellant's Brief at 18.

We presume that the jury follows the trial court's instructions. *Taylor v. State*, 677 N.E.2d 56, 64 (Ind.Ct.App. 1997). Based upon this presumption and the circumstances in this case, the risk of prejudice to Harris appears to be remote rather than substantial. In the absence of a showing of the risk of substantial prejudice, the trial court has no responsibility to engage in a collective interrogation of the jury. *See Flowers*, 738 N.E.2d at 1058. Thus, the trial court did not err in failing to conduct a collective in-court interrogation. Moreover, Harris has not demonstrated that he was placed in a position of grave peril. The trial court correctly denied Harris' motion for mistrial.

Finally, Harris alleges that the trial court used an improper aggravating factor in sentencing him. If a trial court imposes a sentence based upon aggravating or mitigating circumstances, it must include in the record a statement of its reasons for selecting a particular sentence. Ind.Code § 35-38-1-3. The following elements must be included in the court's sentencing statement: (1) all significant aggravating and mitigating circumstances; (2) the reason why each circumstance is determined to be mitigating or aggravating; and (3) a demonstration that the mitigating and aggravating circumstances have been evaluated and balanced. *Allen v. State*, 722 N.E.2d 1246, 1250–51 (Ind.Ct. App.2000).

Here, the trial court identified three aggravating factors which it used to enhance Harris' sentence: (1) both victims were over the age of 65; (2) the nature and circumstances of the crime; and (3) the extraordinary impact on the victim's family and the community. It is the third factor with which Harris claims error.

Under normal circumstances, the impact upon family is not an aggravating factor for purposes of sentencing. *Bacher v. State,* 686 N.E.2d 791, 801 (Ind.1997). Because an impact on family members accompanies almost every murder, we have determined that such impact is already taken into account in the presumptive sentence. *Id.* However, the impact on others may qualify as an aggravator in certain cases. *Id.* In such cases, the defendant's actions must have had an impact on other persons and must be of a destructive nature that is not normally associated with the commission of the offense in question. In addition, this impact must be foreseeable to the defendant. *Id.*

▉ In sentencing Harris, the trial court stated that the extraordinary impact on the extended family and the community was an aggravating factor because three months after Harris shot and killed the owner of the market, the market was forced to close. Although we agree that this incident tragically took the life of a man who started a local business that thrived over several decades, we do not believe that the impact upon a community when a family-owned business closes is the type of incident contemplated by the *Bacher* court. In this case, we find neither actions of a destructive nature not normally associated with the commission of murder nor a result foreseeable to the defendant (i.e., the closing of the business). Thus, in this particular case, the trial court erred by using these circumstances as an aggravating factor in sentencing Harris.

▉ In addition, Harris filed a reply brief to raise the issue of the propriety of his sentence under *Blakely v. Washington,* 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). Initially, we note that a reply brief is not the proper vehicle in which to raise a new issue on appeal. Ind. Appellate Rule 46(C); *State v. Hanley,* 802

N.E.2d 956, 958 n. 9 (Ind.Ct.App.2004), *trans. denied,* 812 N.E.2d 802. However, based upon our supreme court's directive in the recent case of *Smylie v. State,* 823 N.E.2d 679 (Ind. 2005), we will address the issue.

In *Smylie,* while addressing for the first time the effect of *Blakely* on our state's sentencing scheme, our supreme court stated that "it is appropriate to be rather liberal in approaching whether an appellant and her lawyer have adequately preserved and raised a *Blakely* issue." *Smylie,* 823 N.E.2d at 690. The court further stated that it would apply *Blakely* retroactively to all cases on direct review at the time *Blakely* was announced, that a defendant must not have objected at trial in order to raise a *Blakely* claim, and that those defendants who did not appeal their sentence at all will have forfeited a *Blakely* claim. *Id.,* 823 N.E.2d at 687–88. In the present case, Harris filed his Notice of Appeal on September 18, 2003 and his Appellant's Brief on May 3, 2004, well before *Blakely* was decided by the United States Supreme Court on June 24, 2004. Further, Harris raised his sentence as an issue in his Appellant's Brief. Thus, Harris' direct appeal was pending at the time the rule in *Blakely* was announced, and he did appeal his sentence by raising sentencing issues in his Appellant's Brief. Therefore, we deny the State's Motion to Strike Harris' reply brief, and address the *Blakely* issue as it applies to Harris' sentence.

▉ *Blakely* applies and further explains the rule previously set forth in *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). *Apprendi* requires that any fact, other than the fact of a prior conviction, that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt. *Id.* at 2536. *Blakely*

instructs that "[t]he relevant statutory maximum for *Apprendi* purposes is the maximum a judge may impose based solely on the facts reflected in the jury verdict or admitted by the defendant." *Id.* at 2537. Until *Smylie,* we had no definitive answer from this state's highest court as to whether Indiana's sentencing scheme was affected by the rule of *Blakely.* *Smylie* holds that *Blakely* does affect Indiana's sentencing scheme and that, based upon *Blakely* and its progeny *United States v. Booker,* — U.S. —, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), portions of our state's sentencing scheme violate a defendant's Sixth Amendment right to trial by jury. The *Smylie* court thus concluded that in order to bring Indiana's sentencing scheme into compliance with *Blakely,* we may use our present arrangement of fixed presumptive terms, but we must require jury findings on any facts in aggravation. *Smylie,* 823 N.E.2d at 684.

Here, Harris asserts a violation of his constitutional rights because he claims that the trial court based his enhanced sentence upon factors neither determined by a jury nor admitted by him. The trial court sentenced Harris to sixty-five years, ten years above the presumptive sentence for the offense of felony murder. *See* Ind.Code 35–50–2–3. As we have previously stated, the trial court used three aggravating factors to enhance Harris' sentence: (1) both victims were over the age of 65; (2) the nature and circumstances of the crime; and (3) the extraordinary impact on the victim's family and the community. Having already determined that the aggravating factor of extraordinary impact on the community and extended family was not proper, we are left with two remaining aggravating circumstances. These aggravating factors used to enhance Harris' sentence were not submitted to the jury or admitted by Harris. As mandated by *Smylie,* the enhancement of Harris' sen-

tence cannot be imposed without jury findings. Therefore, we reverse and remand for a new sentencing, should the State elect to do so, with the intervention of a jury.

Based upon the foregoing, we conclude that the juvenile court properly denied Harris' motion to dismiss the State's motion for waiver of juvenile jurisdiction and that the trial court properly denied Harris' motion for a mistrial. Further, we conclude that the trial court erred by applying an improper aggravating circumstance in sentencing Harris. Finally, based upon *Smylie,* we conclude that *Blakely* does apply to Indiana's sentencing scheme and that the enhancement of Harris' sentence cannot be imposed without factual findings by a jury.

Affirmed in part, reversed and remanded in part for a new sentencing consistent with this opinion.

BAKER, J., and ROBB, J., concur.