## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



ATTORNEY FOR APPELLANT

Gregory L. Fumarolo
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Ellen H. Meilaender
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Javonieo D. White, *Appellant-Defendant,* | January 24, 2017 |
| | Court of Appeals Case No. 02A03-1512-CR-2367 |
| v. | Appeal from the Allen Superior Court |
| State of Indiana, *Appellee-Plaintiff* | The Honorable Frances C. Gull, Judge |
| | Trial Court Cause No. 02D04-1505-F5-157 |

**Mathias, Judge.**

[1]     Javonieo White ("White"), then a young inmate in the Allen County jail, punched Cade Hetrick ("Hetrick"), his young jailer, while Hetrick was trying to

discipline White for disobedience. White was convicted after a jury trial in Allen Superior Court of Level 5 felony battery. The jury hung on the question of whether White was a habitual offender. The trial court sentenced White to the maximum six-year term in the Department of Correction on the battery conviction and set a new trial on the habitual offender charge. In the meantime, White appealed. While the appeal was pending, a new jury found White to be a habitual offender, and the trial court imposed an additional term of four years for a ten-year aggregate sentence. White appealed again. His consolidated appeal is now before us.

White claims that the State did not disprove his affirmative defense of self-defense beyond a reasonable doubt, that the trial court abused its discretion in denying his motion for a mistrial, and that the trial court was without jurisdiction to try the habitual offender charge.

We affirm.

## Facts and Procedural Posture

The facts below were much disputed. We state them here in the light most favorable to White's conviction.

Around lunchtime on April 20, 2015, White was standing outside his jail cell, number 1316 on the upper tier of the "B" block of the Allen County jail. Every day at 12:30 p.m., first-shift guards would "lock down" the jail — that is, ensure that all inmates were in their cells with the doors locked — to prepare for

the regular shift change at 2:00 p.m. White was waiting for Hetrick to come lock down his cell.

[6] White was frustrated with Hetrick. Earlier that morning, Hetrick had come to White's cell and found him sleeping when he ought to have been up for roll call. Hetrick woke White and ordered him to show his identifying wristband, but White only stuck his head out from under the blanket. The two then exchanged heated language and White felt belittled. From White's perspective, this was but the latest in a string of insults from Hetrick over the last few days in incidents that were not further described. From Hetrick's perspective, before that morning he had "no reason to dislike" White, and he always tried to treat every inmate equally. Tr. p. 223.

[7] White had vented his frustrations over the phone shortly before lunch in separate phone calls to two young women. "I might be in the hole[1] by tonight," he told the first. Ex. Vol., State's Ex. 9.[2] "Why?" she asked with alarm, "Don't start that . . . , oh my gosh!" *Id.* "Because [Hetrick] was talking shit to me today," White replied, and "I'm finna tryna[3] fight [him]. . . . [He's] disrespectful . . . . I'm gonna show [him]." *Id.* "What you gonna get outta that?" she asked

---

[1] That is, "disciplinary segregation." *See* Tr. pp. 202–03; *Stucker v. State*, No. 46A05-1403-CR-117, 2015 WL 520911, at *4 fn.2 (Ind. Ct. App. Feb. 9, 2015).

[2] Calls to and from inmates in the Allen County jail are recorded. Heavily edited recordings of the two phone calls made by White on April 20, 2015, were heard by the jury but not transcribed in the record.

[3] That is, "intend to" or "will." Mark Liberman, Finna *and* Tryna, Language Log (Aug. 5, 2005, 9:47 AM), http://itre.cis.upenn.edu/~myl/languagelog/archives/002378.html.

sensibly. *Id.* "I'm just gonna see," White replied, "I'm just gonna go in the room, and when I go in the room, he come do his checks, I'm gonna just be like, 'What's up? You talking all that shit. Take your radio off and come in here and bump.'"[4] *Id.* "[Hetrick has] been telling all the older [inmates] on the block, like, 'Yeah, y'all better get him. He's gonna make me fuck him up,'" White told the second young woman, "I'm like, 'Alright, we're gonna see who gonna fuck who up.'" *Id.* "I love you," White concluded, "and if I don't call you later on today, it's 'cause I'm in the fucking hole." *Id.*

[8]     In the course of locking down "B" block, Hetrick climbed the stairs to the upper level and saw White standing outside his cell. Hetrick ordered White inside. White refused. "What was with all the shit you was talking this morning?" White demanded. Tr. p. 198. Hetrick persisted, and White eventually relented. Once White was inside the cell, Hetrick tried to shut the cell door. The door popped back open. Feeling resistance as he tried to shut the door, and concluding that White had pushed it back open, Hetrick decided to take White to disciplinary segregation for "refusing a lock down [and] disrupting normal jail operations," Tr. p. 202, a decision the Allen County jail entrusts to the discretion of its guards. Tr. p. 220.

---

[4] That is, "fight" or "provoke a fight." *See* Tr. p. 422 (State: "[Y]ou said you were gonna fight Officer Hetrick . . . ?" White: "Yes, ma'am." State: "[Y]ou were gonna bump with him?" White: "Yes, ma'am."); *J.B. v. State*, No. 49A05-1410-JV-457, 2015 WL 4065808, at *1 (Ind. Ct. App. July 1, 2015).

[9] Hetrick left the cell door open, backed away from the cell, and radioed for the help of Daniel Webb ("Webb"), a fellow corrections officer working nearby, in taking White to segregation. While Hetrick waited for Webb, Hetrick repeatedly ordered White to move to the back of his cell and face the wall to be handcuffed; White repeatedly told Hetrick to take his radio off, come into the cell, and fight him. White was "taking somewhat of a fighter stance towards" Hetrick. Tr. p. 204. Webb arrived within moments of hearing Hetrick's call for help.

[10] Seeing Webb, Hetrick entered White's cell. Webb followed. Hetrick again ordered White to face the wall, but White still refused. "He had his hands balled up in a fist and was just staring Hetrick down." Tr. p. 238. Finally, White turned to the wall, still keeping his hands in a fist. Hetrick and Webb then "decided to push [White] up against the wall to gain a tactical advantage on him." *Id.* Hetrick grabbed or had already grabbed White and the two guards "tried to get [White against the wall] as quickly as [they] could." Tr. p. 252. In response, White spun and flailed in an attempt to shake Hetrick's grip on him, striking Hetrick in the face as he did, and grabbed the top rail of the cell's double bunk bed, anchoring himself to it. "I'll cuff up if he lets go," White told Webb. Tr. p. 239. "We can't do that," Webb replied. *Id.*

[11] Hetrick put out a general call over the radio for the immediate help of any available jail officer. Webb struck White once successfully on the forearm to loosen his grip on the bunk bed rail. Webb and Hetrick then took White to the ground face down, Webb restraining White's lower body and Hetrick his upper.

As Hetrick struggled to control White's left side, White turned and punched Hetrick from below in the left eye with his right fist. "It did not feel good," Hetrick admitted. Tr. p. 209. At that moment, though he did not see the punch, Webb heard White say, "That's what you get." Tr. p. 243. To avoid getting punched again, Hetrick "placed [his] right arm around the back of [White's] neck [so] as to have his head [close], and . . . had his right arm secured in with it [so] as to not choke him." Tr. p. 225.

[12] Webb gained or already had control of White's left arm and started punching White's left shoulder. "[Webb] just hit as much meat as [he] could until [the guards] got [control of White's] right arm." Tr. p. 245. These means eventually achieved their end, and White allowed himself to be handcuffed. At that moment, the jail officers responding to Hetrick's general call for help, delayed by a miscommunication as to White's cell number, entered White's cell and relieved Hetrick and Webb.

[13] Hetrick suffered redness, swelling, and bruising around his left eye where White had punched him. April 20, 2015, was Hetrick's last scheduled work day that week, and he returned to work after his regular two days off. Neither Webb nor White had injuries requiring medical attention.

[14] The State charged White with Level 5 felony battery to a public safety officer causing bodily injury. The State alleged further that White was a habitual offender. White's case was tried to an Allen County jury over two days from October 27, 2015, to October 28, 2015.

On the second day of trial, White took the stand in his own defense. On cross-examination, White said that he followed every order he was given by Hetrick and Webb to the extent he felt was consistent with his own safety. White grew frustrated with the State's line of questioning in response to that claim and addressed Hetrick directly:

> [White:]    I'm just saying, is you — you have —you understand what you doing. You understand what you doing, Hetrick.
>
> [State:]    Excuse me—
>
> [White:]    You're lying to these people—
>
> [State:]    Excuse me—
>
> [White:]    Listen, Judge—
>
> [Court:]    No, no—
>
> [State:]    Excuse me, Your Honor—
>
> [White:]    You're lying to these people.

Tr. p. 440. Confusion briefly reigned as White continued to protest that he did not "care about y'all procedure no more," Tr. p. 441, until the court's bailiffs dissuaded him and the judge had the jury removed from the courtroom. The judge acknowledged White's frustration and the importance he attached to telling his side of the story to the jury, and recessed the court for lunch.

[16]    After lunch, before the jury was brought back into the courtroom, White by counsel moved for a mistrial. Counsel argued that the court's four bailiffs had responded too aggressively when they "pretty much surrounded" the witness stand as White spoke, Tr. p. 447, even though White had remained seated and had not shown or threatened any physical act. The bailiffs' response, counsel argued, created a prejudicial impression on the jury that could not be dispelled.

[17]    The judge denied White's motion, and put on the record the following account of the incident:

> There were four bailiffs . . . . [Only one was in uniform.] I put my hand up and indicated to [two of them] to stand down, basically, that it was well in hand and under control. And I think it's important to note that the security concerns in this courtroom were heightened significantly by the disruption by the Public Defender's investigator . . . .[5] [S]o the officers' concern was heightened by that disruption and that extraordinarily disrespectful show . . . . Mr. White was clearly agitated by the State's questions . . . . I got the jury out of here as quickly as I could. . . . [White] wasn't surrounded. There were two bailiffs, one on either side of him.

---

[5] This earlier incident was not recorded as it happened, but was described by the court and defense counsel during the ruling on White's mistrial motion. As defense counsel was examining White, an investigator from the public defender's office, in a matter unconnected to White's case, entered the courtroom unbidden and greatly agitated, trying to communicate something to defense counsel. The investigator was ejected over his loud protestation. Neither the court, nor the State, nor defense counsel knew why the investigator did so, and the court did not hold White or counsel responsible for it. *See* Tr. pp. 451–52, 454–55.

Tr. pp. 450-53, 455. When the jurors returned to the courtroom, the judge admonished them not to allow the bailiffs' response to White's outburst to enter into their deliberations.

[18] At the end of the second day, both parties rested. The jury returned a verdict of guilty on the battery charge. The jury was then asked to find White a habitual offender but could not reach a unanimous verdict on that question. The jury was dismissed and the judge declared a mistrial as to the habitual offender phase.

[19] A new trial on the habitual offender charge was set for January 12, 2016, but White asked to be sentenced on the battery conviction before then. The court agreed and sentenced him to the six-year statutory maximum term at a hearing on December 2, 2015. At that hearing, White said he intended to hire private counsel for an appeal but thought he would have to wait until after the new trial to do so. Defense counsel expressed concern that this court's "inflexib[ility]" with respect to untimely notices of appeal could work forfeiture of White's right to appeal before the new trial. Sentencing Tr. p. 15. The court agreed and appointed the public defender's office to perfect White's appeal before it became time-barred. White's first notice of appeal was filed on December 30, 2015. The clerk of Allen Superior Court informed us that the record in that appeal was complete on January 26, 2016.

[20] In the meantime, White's new habitual offender trial was reset to March 29, 2016. On that day, a new jury found White to be a habitual offender. On April

5, 2016, the court enhanced the six-year sentence imposed on White on December 2, 2015, by four years, for an aggregate sentence of ten years. White's second notice of appeal was filed on April 8, 2016, together with a motion to consolidate the second and the first appeals. We granted the motion. Docket, "Order" (Apr. 18, 2016). The clerk of Allen Superior Court informed us that the second record was complete on June 10, 2016.

# Discussion and Decision

[21] White claims that the State did not disprove his affirmative defense of self-defense beyond a reasonable doubt, that the trial court abused its discretion in denying his motion for a mistrial, and that the trial court was without jurisdiction to try the habitual offender charge.

## I. A Reasonable Jury Could Have Found That White Provoked Hetrick's Conduct to Retaliate Against Him, Defeating His Claim of Self-Defense

[22] We review challenges to the sufficiency of the evidence rebutting an accused's defense under the same standard as any sufficiency challenge. *Wilson v. State*, 770 N.E.2d 799, 801 (Ind. 2002). We neither reweigh evidence nor re-evaluate witness credibility. *Id.* The evidence is viewed in the light most favorable to the judgment below, which will not be disturbed unless no reasonable trier of fact could have reached the same conclusion. *Id.*

[23] Due process puts the burden on the State to prove the elements of its case beyond a reasonable doubt. *In re Winship*, 397 U.S. 358, 364 (1970); *Powers v. State*, 540 N.E.2d 1225, 1227 (Ind. 1989). Due process therefore requires careful

allocation of burdens of proof with respect to an accused's defenses. *See Mullaney v. Wilbur*, 421 U.S. 684 (1975). In cases of self-defense, "[w]hen a claim of self-defense is raised and finds support in the evidence, the State has the burden of negating at least one of the necessary elements" of the defense. *Wilson*, 770 N.E.2d at 800.

[24] To prove Level 5 felony battery, the State had to prove beyond a reasonable doubt that White knowingly or intentionally touched Hetrick, a public safety official, in a rude, insolent, or angry manner that caused Hetrick bodily injury while he was engaged in his official duties. Ind. Code §§ 35-42-2-1(a)(2) ("employee of a penal facility" as public safety official), (c)(1) (simple battery), (g)(5)(A) (battery to a public safety official).

[25] Proof of these elements notwithstanding, White's conduct was justified if it was done in self-defense. *Moon v. State*, 823 N.E.2d 710, 716 (Ind. Ct. App. 2005) (citing *Jennings v. State*, 262 Ind. 476, 477-78, 318 N.E.2d 358, 359 (1974) (self-defense as defense of justification to battery)), *trans. denied*. White was justified in using reasonable force against Hetrick if White reasonably believed it was necessary to protect himself from Hetrick's use of unlawful force. I.C. § 35-41-3-2(i)(1) (self-defense against public servants). This justification was cut off, however, if White provoked Hetrick's conduct with the intent to cause him bodily injury. *Id.* § (j)(2).

[26] No published decision of this court or our supreme court has construed Section (j)(2) (provocation cuts off self-defense against public servants), but we take

guidance from decisions construing an identical provision applicable to simple self-defense claims. *See* I.C. § 35-41-3-2(g)(2) (provocation cuts off simple self-defense); *see also, e.g., Tharpe v. State*, 955 N.E.2d 836, 844 (Ind. Ct. App. 2011) (Defendant cannot prevail on self-defense if he "provoke[d], instigate[d], or participate[d] willingly in the violence . . . ."), *trans. denied.*

[27] In *Henson v. State*, our supreme court held that Henson, a prisoner, was not entitled to a self-defense instruction in a prosecution for battery to a prison officer. 786 N.E.2d 274, 276 (Ind. 2003). Henson had thrown urine and feces at the officer as the officer came to take Henson into "a more restrictive cell block . . . ." *Id.* Henson argued that the officer's past acts had put him in reasonable fear of violence at the officer's hands, justifying his conduct. The court disagreed, holding that Henson provoked the encounter by previously cursing prison officers, threatening to kill them, and "refus[ing] several orders to be locked up in his cell." *Id.* at 278. Further, the court held, Hensons's preparation for the officer's arrival at his cell showed a retaliatory rather than defensive motive. "While the criminal code is willing to excuse the use of force in certain circumstances . . . , it does not countenance and will not sanction premeditated retaliation for past" wrongs. *Id.*

[28] In *Bryant v. State*, we held that Bryant, a jail inmate, did not prevail on a claim of self-defense in a prosecution for battery to a fellow inmate. 984 N.E.2d 240, 251 (Ind. Ct. App. 2013), *trans. denied.* Bryant had "provoked" the violence, "or at least participated willingly in it," when *inter alia* he "challenged [his victim] to fight in his cell," *id.*, by saying, "[L]et's go to the room . . . ." *Id.* at 244.

[29]     Here, the jury had before it sufficient evidence to find beyond a reasonable doubt that White provoked Hetrick's conduct with the intent to injure him. White's own words over the telephone on April 20, 2015, and at trial were the most damning pieces of such evidence. Over the phone shortly before the jail was locked down at 12:30 p.m., White said that he intended to retaliate against Hetrick for his past perceived insults. Ex. Vol., State's Ex. 9 ("[He's] disrespectful . . . . I'm gonna show [him]."). White already anticipated the wrongfulness of his planned act, *id.* ("I might be in the hole by tonight."), undermining White's claim that he was afraid rather than angry when Hetrick approached his cell. As in *Henson*, White's preparation for Hetrick's arrival permitted the jury to find a retaliatory rather than defensive motive. *Id.* ("[W]hen I go in the room, he come do his checks, I'm gonna just be like, . . . 'Take your radio off and come in here and bump.'"). White's statement as he punched Hetrick, "That's what you get," Tr. p. 243, confirmed that White's desire for retaliation still motivated him at the time of the struggle in his cell.

[30]     Further, White provoked and instigated Hetrick to come into his cell by pushing the cell door back open when Hetrick tried to close it and, as Hetrick claimed and White admitted, by "offer[ing] [Hetrick] to come into [White's] room so [they] could settle it in a fight . . . ." Tr. p. 426. White's "fighter stance" toward Hetrick, Tr. p. 204, as Hetrick stood outside White's cell waiting on Webb, showed White's willingness to fight even as Hetrick presented no imminent threat to him. In his own words, White was eager to see "who gonna fuck who up." Ex. Vol., State's Ex. 9.

There was sufficient evidence for the jury to find that White, by disobeying and baiting Hetrick and Webb, manufactured an opportunity for a violent struggle, which White used to retaliate against Hetrick for perceived past wrongs. Accordingly, the jury was entitled to conclude that White's defense of self-defense was cut off by his "provo[cation of Hetrick] with the intent to cause bodily injury to [Hetrick]." I.C. 35-41-3-2(j)(2). The law of self-defense does not and cannot sanction White's premeditated retaliation. *Henson*, 786 N.E.2d at 278. We reject White's argument, that "amidst . . . conflicting testimony there is consistent evidence which supports the claim that White acted in self[-]defense," Appellant's Br. p. 22, as an invitation to reweigh the evidence.

## II. The Bailiffs' Measured Reaction to White's Outburst on the Stand Did Not Prejudice or Inflame the Jury Against Him

Next, White urges us to find reversible error in the trial court's denial of his motion for a mistrial after White addressed Hetrick from the stand and touched off an allegedly prejudicial reaction from court bailiffs in view of the jury. We find no error here.

Mistrial is an "extreme" remedy of last resort. *Harris v. State*, 824 N.E.2d 432, 439 (Ind. Ct. App. 2005). Grant of a mistrial is within the sound discretion of the trial court. *Id.* In reviewing the trial court's decision for an abuse of that discretion, we defer to the trial court's unique ability to "gauge the circumstances and [their] probable impact on the jury." *Id.* To prevail on appeal, White must establish that the bailiffs' reaction so prejudiced and inflamed the jury against him that he was placed in a position of grave peril to

which he should not have been subjected. *Id.* The gravity of the peril is measured by the circumstances' probable persuasive effect on the jury's decision. *Id.* A trial court usually insulates itself from review by admonishing the jury to disregard the allegedly prejudicial and inflammatory event. *Alvies v. State*, 795 N.E.2d 493, 506 (Ind. Ct. App. 2003), *trans. denied.*

[34] The State urges us to resolve White's claim in reliance on the rule that a defendant may not premise a mistrial on his own misconduct. Appellee's Br. p. 19 ("Although [White] tries to frame his claim as one based on the response of courtroom security, the fact remains that it was [White's] outburst that prompted that response."). This is a correct statement of the law, *see Reynolds v. State*, 625 N.E.2d 1319, 1321 (Ind. Ct. App. 1993), but it is inapplicable here. A defendant is not made to suffer any and every act by court officers so long as it is arguably reactive. The contrary would give the State a kind of heckler's veto over a defendant's right to a fair and impartial trier of fact. Just as a defendant by his own conduct cannot manufacture grounds for a mistrial where none existed before, so officers of the State by their own conduct cannot simultaneously prejudice the fact-finder and deny a defendant relief from that prejudice.

[35] The State has the better argument when it says the bailiffs' reaction did not gravely imperil White, and that any potential prejudice was cured by the trial court's admonition to the jury to disregard what the bailiffs did. Appellant's Br. pp. 19-21. We agree, deferring to the trial court's unique position to evaluate the likely impact of the bailiffs' reaction on the jury. As described by the trial

court, that reaction was measured and went no further than necessary to restore order in the courtroom. Two bailiffs, neither in uniform, approached White and stood on either side of him to dissuade him from further disrupting the proceedings. The bailiffs did not harangue or demean White; they said only, "You're done," "Stop," and "Stop talking." Tr. p. 442. There is no evidence that the bailiffs physically restrained or physically threatened White to get his cooperation. When the jury returned to the courtroom, White was still present and physically unrestrained, as he had been before. In short, there is no evidence to support White's contention that the "actions of the court officers here signaled to the jury their views on the guilt of White." Appellant's Br. p. 25. To the extent that any such signal could have been received by a juror, it was dispelled by the judge's immediate admonition to disregard the bailiffs' reaction from jury deliberations.

[36] The trial court did not abuse its discretion when it denied White's motion for a mistrial.

### III. The Trial Court Had Jurisdiction to Try the Habitual Offender Charge Because There Was No Final Judgment Before It Did

[37] Finally, White claims that the trial court lacked jurisdiction over his case after January 26, 2016, and that its March 29, 2016, judgment against him on the habitual offender charge is therefore void. The clerk of Allen Superior Court notified us that the record in White's first appeal was complete on January 26, 2016. On that date, White argues, the trial court lost and we assumed jurisdiction over his case. Ind. Appellate Rule 8 ("The Court on Appeal

acquires jurisdiction on the date the Notice of Completion of Clerk's Record is noted in the Chronological Case Summary."); Appellant's Br. p. 28.

[38] White's argument fails. Any jurisdictional defect in White's case was in this court's jurisdiction, not the trial court's. We have jurisdiction over appeals "from Final Judgments." App. R. 5(A). As relevant here, a final judgment "disposes of all claims as to all parties." *Id.* 2(H)(1). It "reserves no further question or direction for future determination." *Bueter v. Brinkman*, 776 N.E.2d 910, 913 (Ind. Ct. App. 2002) (quoting *Thompson v. Thompson*, 259 Ind. 266, 269, 286 N.E.2d 657, 659 (1972)). The December 4, 2015, judgment of conviction against White on the battery charge was not the final judgment of the trial court in his case because, by reserving the habitual offender charge for future determination, it did not dispose of all the State's claims against White.

[39] In criminal cases, sentences are final judgments. *Hopkins v. State*, 420 N.E.2d 895, 896 (Ind. Ct. App. 1981) ("[D]efendant has never been sentenced. . . . Thus, we have no final judgment . . . ."); *Terrell v. State*, 180 Ind. App. 634, 636, 390 N.E.2d 208, 209 (1979) ("[S]entencing is final judgment."). The enhancement to the sentence of a habitual offender is inextricable from the sentence itself and travels with it. I.C. § 35-50-2-8(j) ("[Habitual offender status] results in an enhanced sentence. . . . The court shall attach the . . . enhancement to the felony conviction with the highest sentence imposed . . . . If [that conviction] is set side or vacated, the court shall . . . apply the . . . enhancement to the felony conviction with the next highest sentence . . . ."). Thus, no judgment in a criminal case is final and appealable under Appellate Rule

2(H)(1) until pending enhancements to the sentence have been decided and applied by the sentencing court.[6]

[40] The clerk of Allen Superior Court notified us that the record in White's second appeal, taken after imposition of the habitual offender enhancement, was complete on June 10, 2016. We acquired jurisdiction over White's case on that date. App. R. 8. Before then, we took no action on White's case other than to extend the time to file briefs, affecting no party's substantial rights, *see id.* 66(A) (harmless error), and to consolidate the two appeals on April 18, 2016, in aid of our jurisdiction over one final judgment. *See id.* 8 ("Prior to [the] date [on which the Court on Appeal acquires jurisdiction], the Court on Appeal may . . . exercise limited jurisdiction in aid of its appellate jurisdiction . . .").

[41] The defect in our jurisdiction was cured on June 10, 2016. There was never any defect in the trial court's jurisdiction before it decided and applied the habitual offender enhancement to White's sentence, thereby disposing of all the State's claims against White. Even if the unenhanced battery sentence had been sufficiently severable from the habitual offender enhancement to be an appealable final judgment, that would still have left the trial court's jurisdiction

---

[6] This does not, of course, allow the State in such cases to postpone indefinitely a defendant's appeal of a conviction by delaying retrial on a sentence enhancement. A defendant in White's position should seek entry of an appealable final judgment on fewer than all claims or issues under Indiana Trial Rule 54(B) and Appellate Rule 2(H)(2).

over the habitual offender charge undisturbed. We reject White's contrary argument.

## Conclusion

[42] For these reasons, White's defense of self-defense was disproved by sufficient evidence, the trial court did not abuse its discretion in denying White's motion for a mistrial, and the trial court had jurisdiction to enhance White's sentence as a habitual offender. White's conviction is affirmed in all respects.

[43] Affirmed.

Robb, J., and Brown, J., concur.