**John GLENN, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 49A02–0303–CR–215.**

Court of Appeals of Indiana.

Sept. 24, 2003.

Transfer Denied Dec. 9, 2003.

John Pinnow, Greenwood, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Cynthia L. Ploughe, Deputy Attorney General Indianapolis, IN, Attorneys for Appellee.

## OPINION

BAKER, Judge.

Today we are once again confronted with the issue of a witness's reference to a polygraph examination while testifying at trial. Appellant-defendant John Glenn appeals his conviction for Felony Murder[1] and Robbery,[2] a class A felony, arguing that the trial court abused its discretion in denying his motion for a mistrial when a witness referred to a polygraph examination on cross-examination. Concluding that the admonishment to the jury instructing it to disregard evidence of the polygraph test sufficiently mitigated any prejudice that inured to Glenn, we affirm the convictions. We also offer an example of an admonishment that our trial judges might use in the future with regard to polygraph examination issues.

*FACTS*

On December 4, 2000, seventy-five-year-old Kennard A. Neal told his brother that he was going grocery shopping. Neal, who was known to carry large amounts of cash, left in his blue-green 1999 Toyota Corolla but he did not return.

On December 8, several members of Neal's family filed a missing persons report and the Marion County Sheriff's Department began an investigation into Neal's disappearance. Sometime in late December, Clarence Hobbs approached his neighbor, James Deloney, and offered to sell him some vehicle parts from a blue-green Toyota. Hobbs told Deloney that he did not have good title to the vehicle and stated that the vehicle was "a little warm." Tr. p. 185. Deloney refused the offer, so Hobbs offered to rent the vehicle to another neighbor in exchange for money or drugs.

Neal's vehicle was eventually located on December 19, 2000, at the Holiday Inn parking lot on East 21st Street in Indianapolis. There was blood on the control knobs, console and the passenger seat. On January 15, 2001, Neal's frozen body was discovered on a bank of the White River near downtown Indianapolis. It was subsequently determined that Neal had suffered multiple stab wounds that caused his death. The police also discovered that Glenn, Clarence Hobbs and Gregory King used two of Neal's credit cards to purchase numerous items on the northeast side of Indianapolis.

Homicide Detective Marc Prater was investigating Neal's murder and, at some point, he interviewed Pamela Jones regarding some unrelated forgery charges. During the course of the interview, Jones told him that she was acquainted with

1. Ind.Code § 35–42–1–1.

2. I.C. § 35–42–5–1.

Glenn and the others. Thereafter, Jones provided a taped statement that related to the case involving Neal's homicide. At that time, Jones revealed that in mid-December, she encountered Glenn who showed her a large amount of cash and informed her that she had "missed out" on a robbery. Tr. p. 311–12. Specifically, Glenn told Jones that he and Hobbs were at a Kroger grocery store at 10th and Shadeland when they noticed an older man with a large amount of cash standing in line in front of them. They followed him outside, and Glenn eventually admitted to Jones that he had "waxed" the older man. Tr. p. 314, 349. Following this conversation, Jones told detectives that Glenn drove her to Hobbs's house, showed her a small blue-green four-door car parked nearby and asked Jones if she liked his new car.

On April 12, 2001, Glenn was charged with felony murder, murder and robbery. The jury was unable to reach a verdict on the felony murder and robbery charges and acquitted Glenn of murder. The State then amended the information and refiled the charges of felony murder and robbery. At some point during the retrial, Glenn questioned Jones about her communications with Detective Prater. After defense counsel asked when Detective Prater took her recorded statement, Jones responded as follows: "I believe the second or third time I went over there. When I had the polygraph test, is when we . . . done this first statement." Tr. p. 328. Immediately after this response, the trial court dismissed the jury from the courtroom and Glenn's counsel moved for a mistrial. He argued that an admonishment could not correct the impression Jones conveyed to the jury that she had taken and passed the polygraph test.

Following a brief recess, the trial judge returned and denied the motion for mistrial as follows:

The Court finds that in this situation the statement was elicited in response to questions from Defense and was not made intentionally by the witness but was rather in a frame of reference as to when a particular statement was given. Also, it was made at a time when this witness had, by her own admission, several other cases pending and actually had not yet given a statement regarding this case but did have the carjacking situation that she was still dealing with, with Sgt. Prater. I do not find that this passing reference with no mention of any type of such result or as to which case it was involved, places the Defendant in such grave peril that a mistrial is required. You are admonished, ma'am, that you may not in any way use the word 'polygraph, lie detector' or refer to it in any way throughout the course of your testimony.

Tr. p. 333. When the jury returned to the courtroom, the following admonishment was given:

Ladies and gentlemen of the jury, you are ordered to disregard the witness's last remark prior to the break. You may not use this remark or consider this remark in any way. You are to consider it as though it had never been heard and it is stricken from the record. You may proceed, State.

Tr. p. 335. In the end, Glenn was found guilty on both counts and was subsequently sentenced to a term of sixty years. He now appeals.

## DISCUSSION AND DECISION

In addressing Glenn's argument that he was entitled to a mistrial because of Jones's comments regarding the polygraph test, we note that the decision whether to grant a mistrial is within the trial court's discretion. *Booher v. State,*

773 N.E.2d 814, 820 (Ind.2002). The trial court's denial of a mistrial will be reversed only where the defendant demonstrates that the conduct complained of was both error and had a probable persuasive effect on the jury's decision. *Pierce v. State*, 761 N.E.2d 821, 825 (Ind.2002). Additionally, our supreme court has determined that a mistrial is an extreme remedy used only when no other curative measure will rectify the situation. *Moore v. State*, 652 N.E.2d 53, 57 (Ind.1995).

■■■ In general, a reference to a polygraph examination without an agreement by both parties is inadmissible and grounds for error. *Partlow v. State*, 453 N.E.2d 259, 271 (Ind.1983). As we observed in *Williams v. State*, proof of the fact that a polygraph test was taken or refused is, in the absence of a waiver or stipulation, inadmissible in a criminal prosecution. 755 N.E.2d 1128, 1132 (Ind.Ct. App.2001); *see also Conn v. State*, 535 N.E.2d 1176, 1180 (Ind.1989). However, when the trial court admonishes the jury to disregard the inadmissible evidence, the prejudicial impact of the evidence may be sufficiently mitigated. *Sherwood v. State*, 702 N.E.2d 694, 698 (Ind.1998). The question of whether a defendant was so prejudiced that the admonishment could not cure the error is one that must be determined by examining the facts of the particular case. *Williams*, 755 N.E.2d at 1132. The burden is on the defendant to show that he was harmed and placed in grave peril by the denial of the mistrial motion. *Id.*

■■■ Here, it is apparent that Glenn may have invited the error when his counsel attempted to pinpoint the precise time that Jones gave the recorded statement to the police. Additionally, we agree with the trial court's observation that Jones's remark was not intentional and that there was no mention of the test results. Final-

ly, Jones's testimony does not reveal with any certainty as to which case Jones was referring when she mentioned the polygraph test. Although Glenn asserts that Jones's reference to the polygraph test prejudiced him and the trial court's refusal to grant a mistrial placed him in grave peril to which he should not have been subjected, he has failed to demonstrate the same. Thus, inasmuch as Glenn failed to meet his burden of showing that he was harmed or placed in grave peril, we find no abuse of discretion.

Finally, while we conclude that the admonishment was sufficient to cure the potential prejudice that may have resulted, it should be noted that juries may be more likely to adhere to an admonishment or limiting instruction if the trial judge would go one step further and inform them of the reason for disregarding the inadmissible evidence. Specifically, it has been observed that "[a]n effective system of justice requires the correct application of the court's intentions as expressed in [the] instructions." Joel D. Lieberman & Bruce D. Sales, *Jury Instructions: Past, Present, and Future*, 6 Psychol. Publ. Pol'y & L. 587 (2000). Moreover, psychological studies tend to show, and legal commentators tend to agree that, in general, "limiting instructions are not effective in preventing the improper use of prior conviction evidence." Tarleton David Williams, Jr., *Witness Impeachment by Evidence of Prior Felony Convictions: The Time Has Come for the Federal Rules of Evidence to Put on the New Man and Forgive the Felon*, 65 Temp. L.Rev. 893, 926 (1992).

■■■ In an effort to remedy this potential problem with regard to polygraph examinations, the trial judge might articulate to the jury the reasons that such evidence should not be considered. For instance,

we suggest that the following admonishment might be given:

> A suggestion has been made that the witness took a polygraph examination, yet there has been no suggestion as to what the subject matter of the polygraph test was. Because scientific research has found that polygraph tests are not reliable, they are inadmissible. I would ask that you disregard the last comment made by the witness.

We acknowledge that no instruction may be "fail-safe." However, a more specific admonishment such as the one set forth above may serve to further mitigate the prejudicial impact of the evidence upon the defendant. Specifically, the jurors may be more inclined to adhere to such an admonishment once they are instructed as to the reason why polygraph evidence should be disregarded. The same may be helpful when excluding other inadmissible evidence.

Affirmed.

BROOK, C.J., and SHARPNACK, J., concur.