**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**TIMOTHY P. BRODEN**
Lafayette, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**KARL M. SCHARNBERG**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| EDWARD ZARAGOZA, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 79A02-1209-CR-744 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE TIPPECANOE SUPERIOR COURT
The Honorable Randy J. Williams, Judge
Cause No. 79D01-1101-MR-01

**January 21, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**PYLE, Judge**

Edward Zaragoza ("Zaragoza") appeals his convictions for murder,[1] Class A felony conspiracy to commit robbery,[2] Class A felony conspiracy to commit burglary,[3] Class A felony attempted robbery,[4] Class A felony burglary,[5] Class D felony conspiracy to commit theft,[6] Class D felony theft,[7] and Class B felony possession of a firearm by a serious violent felon[8] as well as the determination that he was an habitual offender.[9]

We affirm.

## ISSUES

1. Whether the trial court erred in its refusal to dismiss the indictment against Zaragoza.

2. Whether the trial court abused its discretion in denying Zaragoza's motion for a mistrial.

3. Whether the trial court abused its discretion in its decisions regarding admission of certain evidence.

---

[1] Ind. Code § 35-42-1-1.

[2] I.C. §§ 35-41-5-2, 35-42-5-1.

[3] I.C. §§ 35-41-5-2, 35-43-2-1.

[4] I.C. §§ 35-41-5-1, 35-42-5-1.

[5] I.C. § 35-43-2-1.

[6] I.C. §§ 35-41-5-2, 35-43-4-2.

[7] I.C. § 35-43-4-2.

[8] I.C. § 35-47-4-5.

[9] I.C. § 35-50-2-8.

FACTS

In March 2010, Clint Laxton ("Laxton") learned that Kory Rogers ("Rogers") had burglarized the house of Kurt Foster ("Foster") and had taken around $20,000 and a large quantity of marijuana. Laxton told his longtime friend, Wes Coffey ("Coffey"), who lived in Arizona, about the burglary and explained that he wanted to steal the money and marijuana from Rogers. In late March or early April, the two formed a plan to do so, and Coffey contacted Zaragoza to enlist him in the plan. Because Zaragoza and Laxton did not know each other well, Coffey acted as an intermediary between them.

The three planned for Laxton, who knew Rogers and had previously purchased marijuana from him, to feign being held hostage by Zaragoza, who would supply the weapon. They planned to knock on Rogers' door, and, if Rogers answered the door, they would go inside and rob him of the cash, drugs, and guns they believed were in the house. Zaragoza planned to tell Rogers that they had come to collect what Rogers had taken from Foster. They intended to execute their plan on April 5, 2010.

When April 5, 2010 arrived, Laxton had second thoughts and failed to show up at the designated meeting place. Zaragoza called Coffey and asked him to contact Laxton, and Zaragoza told Coffey that he was thinking of committing the robbery by himself. Between April 5 and April 8, 2010, Zaragoza continued to speak to Coffey on the phone and indicated that he still intended to carry out the robbery.

On the morning of April 8, 2010, Zaragoza drove with Jeremiah Thompson ("Thompson") to Rogers' house in Lafayette. When they arrived there, Zaragoza called

3

Coffey to inform him that they were on the scene. Ultimately, Rogers came to the door with a shotgun and was shot in the chest and killed.

Rogers' girlfriend discovered his body later that day and called police. The police discovered an ejected cartridge casing from a .40 caliber handgun on the garage floor. The police attempted to obtain fingerprints and DNA from the cartridge found in the garage. An initial DNA test excluded Zaragoza as a major contributor of DNA on the cartridge. A later DNA test revealed that the DNA of Detective Paul Huff ("Det. Huff") was found on the casing, as he had apparently touched it at some point prior to its testing for DNA.

The police did not immediately arrest Zaragoza. In fact, Zaragoza—who was a confidential informant with Detective Andrew Swartz ("Detective Swartz") for the Tippecanoe Sheriff's Department and its FBI Safe Streets Task Force—had multiple conversations with Detective Swartz between the date of the murder and the date of his arrest on April 18, 2010.[10] One of these conversations occurred on April 13, 2010 and was recorded by Detective Swartz. During this conversation, Zaragoza discussed Rogers' robbery of a drug dealer and Rogers' later death.

Zaragoza also spoke multiple times, via text and telephone, with Detective Swartz between the evening hours of April 17 and the early morning hours of April 18, 2010. Around 6:00 a.m. on April 18, 2010, the police went to Zaragoza's house in Mooresville

---

[10] Coffey was also a confidential informant for Detective Swartz.

to arrest him for conspiracy to commit robbery. They transported him to the Lafayette Police Department where he later gave a recorded statement to police.

While incarcerated, Zaragoza spoke with several jail inmates, including Tim Budde ("Budde"). In these conversations, he made various references to his co-conspirators, their involvement in the attempted robbery and murder, their disposal of the gun, and his fear that he would be prosecuted for Rogers' murder.

A grand jury was impaneled on November 4, 2010. On January 20, 2011, the grand jury returned true bills of indictment against Zaragoza for the crimes listed above, for which he was later convicted and now appeals. On April 20, 2012, Zaragoza moved to dismiss the indictments, alleging that the State withheld exculpatory evidence regarding DNA results of the .40 caliber shell casing from the grand jury rendering the proceedings defective. On May 1, 2012, the trial court denied Zaragoza's motion to dismiss the indictment.

The case proceeded to trial in May 2012. Prior to trial, the trial court granted the State's motion in limine and prohibited any witnesses from testifying about any polygraphs administered. On May 4, 2012, the fourth day of the trial, during the State's case-in-chief, Coffey testified that Laxton had told him that he had passed a polygraph examination. Zaragoza moved for a mistrial based on the mention of the polygraph and results, and the trial court granted the mistrial.

Thereafter, Zaragoza filed a motion to exclude Coffey as a witness during his retrial. Specifically, Zaragoza alleged that Coffey had committed perjury during his first

5

trial when he testified about Laxton's polygraph results, and he argued that he would be unable to cross-examine or impeach Coffey about this polygraph testimony. After holding a hearing on the issue, the trial court denied Zaragoza's motion to exclude Coffey as a witness in the retrial. Also prior to the retrial, the trial court held a hearing and denied Zaragoza's motion to suppress his April 18, 2010 police statement. The trial court also ruled that a redacted version of Zaragoza's April 13, 2010 recorded telephone conversation with Detective Swartz would be admitted at the retrial.

A second jury trial began on July 10, 2012. Prior to opening statements, the trial court granted the State's motion in limine to prohibit any questions to Coffey regarding his prior testimony being the cause of the mistrial in the first trial. When the State called Coffey as a witness, Zaragoza did not object to his testimony.

On the fifth day of trial, during direct examination of Budde, the State asked, "Did you ever ask to see [Zaragoza's] paperwork?" (Tr. 1484). Budde responded, "No, I did not. Actually, I take that back. I did ask to see the polygraph, but I was denied." (Tr. 1484). Zaragoza immediately objected, the State moved to strike, and a sidebar conference was conducted. Zaragoza moved for a mistrial, claiming that the State had invited the response. Zaragoza alternatively argued that he wanted to admit the results of the polygraph. The State pointed out that Zaragoza took three polygraphs, failing the first two while, possibly, passing the third. The trial court denied the motion for a mistrial and admonished the jury to disregard any reference to the polygraph.

Later, during Detective Swartz's testimony, the State moved to admit State's Exhibit 57R and 57 RT—the redacted April 13, 2010 recorded telephone conversation between Zaragoza and Detective Swartz and the accompanying transcription. Zaragoza objected and requested that two of the redacted portions be admitted, claiming that they were admissible as statements that Zaragoza made about the "credibility and trustworthiness" of Coffey. (Tr. 1551). The trial court overruled the objection and admitted the redacted version of the telephone call and transcript.

When the State moved to enter Zaragoza's April 18, 2010 police statement, Zaragoza objected and asked the trial court to incorporate his motion to suppress argument that his statement was involuntary because Detective Swartz intentionally deprived him of sleep. The trial court overruled the objection and admitted the police statement.

The jury ultimately convicted Zaragoza of all counts. The trial court found Zaragoza to be an habitual offender. Zaragoza was sentenced to an aggregate term of imprisonment of 120 years. Additional facts will be provided below as necessary.

DECISION

1.    The Trial Court's Refusal to Dismiss the Indictments

Zaragoza first argues that the trial court erred in refusing to dismiss the indictments against him. Specifically, he contends that the "State misled grand jurors as to the results of DNA testing" by eliciting testimony that the DNA testing was ongoing, even though Zaragoza had been eliminated as a major contributor of the DNA found on

7

the shell casing. (Zaragoza's Br. 6). Zaragoza claims these actions "impaired the essential functions of the grand jury thus rendering the proceedings defective and subject to dismissal pursuant to Ind. Code 35-34-1-7." *Id.* In response, the State argues that Zaragoza's motion to dismiss the indictment was subject to summary dismissal, as it was untimely filed. The State further argues that regardless of the timeliness of the request for dismissal, Zaragoza's argument fails because the State has no duty to present exculpatory evidence to the grand jury.

Indiana Code § 35-34-1-4 provides that a motion to dismiss that is premised on defective grand jury proceedings must be filed no later than twenty days before the omnibus date; motions filed after that deadline may be summarily denied by the trial court. *Sappenfield v. State*, 462 N.E.2d 241, 244 (Ind. Ct. App. 1984). Here, the omnibus date was March 4, 2011. Therefore, Zaragoza's motion would have been untimely after February 12, 2011, and properly subject to summary denial. *Id.* Because Zaragoza filed his motion to dismiss the indictments on April 20, 2012, well after the omnibus date had passed, the motion was subject to summary denial by the trial court. Nevertheless, because of delays in discovery attributed to the State, the trial court addressed the motion on its merits. Still, we find no error in its decision to deny Zaragoza's motion to dismiss.

Our review of the record shows no misleading testimony about the DNA testing done in this case. Indeed, DNA testing was ongoing during the grand jury proceedings, as law enforcement was attempting to identify the major contributor of the DNA sample

8

found on the shell casing. This was not completed until after the grand jury returned the indictments. It is of no consequence that the State did not reveal to the grand jury that testing on the shell casing excluded Zaragoza, as the State is under no obligation to disclose exculpatory evidence during grand jury proceedings. *Wurster v. State*, 708 N.E.2d 587, 592-93 (Ind. Ct. App. 1999) (citing *U.S. v. Williams*, 504 U.S. 36 (1992)), *aff'd in relevant part*, 715 N.E.2d 341 (Ind. 1999), *reh'g denied*). Even if the State misled the grand jury concerning DNA testing, Zaragoza has failed to make any showing on how this alleged misconduct tainted the *entire* grand jury process. Therefore, the trial court did not err in denying Zaragoza's motion to dismiss the indictment. *See e.g.*, *Averhart v. State*, 470 N.E.2d 666, 679 (Ind. 1984) (where defendants challenged certain testimony, but not how the evidence was obtained, defendants failed to show that grand jury proceedings were defective), *cert. denied*.

2.    The Trial Court's Denial of Zaragoza's Motion for Mistrial

Zaragoza also challenges the trial court's denial of his motion for a mistrial, arguing that the potential prejudice of Budde's testimony regarding polygraph testing placed him in grave peril. In response, the State argues that the trial court's admonishment to the jury to disregard the testimony was sufficient to mitigate the potential prejudice.

A mistrial is an extreme remedy and should only be used when no other curative measure will rectify a truly grave peril to a defendant's right to a fair trial. *Glenn v. State*, 796 N.E.2d 322, 325 (Ind. Ct. App. 2003), *trans. denied*. "Generally, when the

9

trial court admonishes the jury to disregard inadmissible evidence regarding a polygraph examination, the prejudicial impact of that evidence may be sufficiently mitigated." *Shriner v. State*, 829 N.E.2d 612, 619 (Ind. Ct. App. 2005) (citing *Glenn*, 796 N.E.2d at 325).

We provide great deference to a trial court's decision whether to grant a mistrial because the trial judge is in the best position to gauge the surrounding circumstances of an event and its impact on the jury. *Williams v. State*, 755 N.E.2d 1128, 1132 (Ind. Ct. App. 2001), *trans. denied*. This Court reviews a trial court's decision whether to grant a mistrial only for an abuse of discretion. To prevail on appeal from the denial of a motion for mistrial, the appellant must establish that the questioned conduct "was so prejudicial and inflammatory that he was placed in a position of grave peril to which he should not have been subjected." *Mickens v. State*, 742 N.E.2d 927, 929 (Ind. 2001). Indeed, he must show that no admonishment could have cured the error. *Etienne v. State*, 716 N.E.2d 457, 461 (Ind. 1999).

Here, after Zaragoza objected to Budde's testimony that he asked to see Zaragoza's polygraph, the trial court denied the objection and admonished the jurors as follows:

> THE COURT: Ladies and gentlemen, this witness had made reference to a polygraph but no suggestion as to its nature. Because scientific research has found that polygraphs are not reliable, they are inadmissible. I admonish that you would disregard the last comment –
>
> You couldn't hear me? Did you hear anything I said?
>
> JURORS: Yes.

10

THE COURT:       Okay.  I admonish that you disregard the last comment of the witness, the last response of the witness, and do not take the same into account in your deliberations in any fashion in this case.

(Tr. 1501).   The trial court's admonishment here very closely mirrors the suggested admonishment we provided in *Glenn*, 796 N.E.2d at 326, which read:

A suggestion has been made that the witness took a polygraph examination, yet there has been no suggestion as to what the subject matter of the polygraph test was.  Because scientific research has found that polygraph tests are not reliable, they are inadmissible.  I would ask that you disregard the last comment made by the witness.

Here, Zaragoza has offered no argument as to why the trial court's admonition was insufficient to mitigate any prejudice, nor has he offered any support for his argument that no admonishment could have cured the potential prejudicial impact by Budde's mention of polygraph testing.  His cursory argument on the issue is limited to a recitation of the testimony and admonishment at issue, a quotation from *Shriner*, 829 N.E.2d at 619, regarding the potentially prejudicial impact of polygraph-related testimony (which is not disputed here), and the conclusory, naked assertions that "the trial court's admonishment was insufficient to cure the [potential prejudice] and that "he was harmed and placed in grave peril by the denial of his motion for a mistrial."  (Zaragoza's Br. 8-10).  We are unpersuaded.

The trial court followed the suggested admonishment this Court provided in *Glenn*, and Zaragoza has failed to demonstrate why the admonishment was insufficient to suit the facts of this particular case.  *See Williams*, 755 N.E.2d at 1132 (explaining that whether a defendant was so prejudiced that the admonishment could not cure the error is

11

a question that must be determined by examining the facts of the particular case).  Absent

any such argument from Zaragoza, we defer to the trial court's assessment of the

situation and its impact on the jury, *id.*, and find that the trial court did not abuse its

discretion by admonishing the jurors as detailed above and proceeding with the trial.

3.      Evidentiary Rulings

Zaragoza argues that the trial court abused its discretion by (a) admitting

Zaragoza's statement to police; (b) allowing Coffey to testify; and (c) excluding redacted

portions of his telephone conversation with Detective Swartz.

The decision to admit or exclude evidence is within a trial court's sound discretion

and is afforded great deference on appeal."  *Carpenter v. State*, 786 N.E.2d 696, 702 (Ind.

2003).  An abuse of discretion occurs when the decision reached is clearly against the

logic and effect of the facts and circumstances before the court.  *Walker v. State*, 986

N.E.2d 328, 333 (Ind. Ct. App. 2013), *trans. denied*, *petition for cert. filed*, (Oct. 9,

2013).  In reviewing the denial of a motion to exclude, this Court does not reweigh the

evidence and considers conflicting evidence most favorable to the trial court's ruling.  *Id*.

(a)      The Trial Court's Admission of Zaragoza's Statement to Police

Zaragoza argues that the trial court erred in admitting his April 18, 2010 statement

to police.  Zaragoza contends, as he did at trial, that the statement was inadmissible

because it was involuntary.  Specifically, Zaragoza contends that his statement was

involuntary because Detective Swartz intentionally deprived him of sleep prior to his

statement by texting and talking to him during the late evening hours of April 17 and early morning hours of April 18.

The decision to admit a defendant's statement is a "matter of discretion of the trial court after considering the totality of the circumstances." *Miller v. State*, 770 N.E.2d 763, 767 (Ind. 2002). "'When reviewing a challenge to the trial court's decision, we do not reweigh the evidence but instead examine the record for substantial, probative evidence of voluntariness.'" *Id.* (quoting *Schmitt v. State*, 730 N.E.2d 147, 148 (Ind. 2000)). When a defendant challenges the voluntariness of a confession, the State must prove by a preponderance of the evidence that the confession was voluntarily given. *Smith v. State*, 689 N.E.2d 1238, 1246-47, n.11 (Ind. 1997). The finding of voluntariness will be upheld if the record discloses substantial evidence of probative value that supports the trial court's decision. *Haak v. State*, 695 N.E.2d 944, 947 (Ind. 1998).

Here, the record shows that Zaragoza had a prior relationship with Det. Swartz as one of his confidential informants and that he would often contact Det. Swartz by text or a phone call during the night or early morning hours. On April 17, 2010, the night before the challenged statement was taken, Det. Swartz contacted Zaragoza by telephone around 8:00 PM, and Zaragoza texted Det. Swartz around midnight, sending messages between midnight and 12:22 AM. Det. Swartz sent messages back to Zaragoza between midnight and 12:21 AM and then called him around 12:30 AM. The next communication between the two occurred at 4:08 AM when Zaragoza initiated another text conversation with Det. Swartz, sending a total of 34 messages to him 4:08 AM and 5:10 AM. As the State

13

correctly points out regarding the events of the night, "[w]ith the exception of the first phone call, which occurred around 8:00 PM, all of the communication between Zaragoza and Det. Swartz were initiated by Zaragoza." (State's Br. 21).

The record further shows that the police interview began at 8:35 AM and lasted three hours and thirty-seven minutes, ending when Zaragoza asserted his right to counsel. Zaragoza's assertion of his right to stop speaking to police supports the trial court's finding that his statements up to that point were voluntarily given, and his initiation of the previous night's conversations with Det. Swartz further supports the finding that there was no coercion at play here.

For those reasons, the Court finds that the trial court did not abuse its discretion in admitting Zaragoza's statement to Det. Swartz.

(b)     The Trial Court's Allowance of Coffey's Testimony

Zaragoza also challenges the trial court's refusal to exclude the testimony of Coffey. Specifically, he argues that Coffey should have been excluded as a witness in this second trial due to his polygraph-referenced testimony from the first trial that led to the trial court declaring a mistrial. Although Zaragoza made a pre-trial motion to exclude Coffey as a witness, he did not object when the State called Coffey as a witness at trial. Because Zaragoza did not object to Coffey when he was called as a witness, he has waived any appellate challenge to the admission of his testimony. *See Jackson v. State*,

735 N.E.2d 1146, 1152 (Ind. 2000) ("The failure to make a contemporaneous objection to the admission of evidence at trial results in waiver of the error on appeal.").[11]

(c)     The Trial Court's Admission of a Redacted Telephone Conversation between Zaragoza and Detective Swartz

Finally, Zaragoza claims that the trial court erred in not admitting redacted portions of a telephone call between Zaragoza and Detective Swartz. On appeal, Zaragoza claims that per Indiana Evidence Rule 106, the redacted portions of the telephone call were admissible to "shed light on [Zaragoza's] relationship with Coffey and that Zaragoza did not trust Coffey." (Zaragoza's Br. 15).

Evidence Rule 106 states that "[w]hen a writing or recorded statement or part thereof is introduced by a party, an adverse party may require at that time the introduction of any other party or any other writing or recorded statement which in fairness ought to be considered contemporaneously with it." Rule 106 "is designed to avoid misleading impressions caused by taking a statement out of its proper context or otherwise conveying a distorted picture by the introduction of only selective parts." *Lieberenz v. State*, 717 N.E.2d 1242, 1248 (Ind. Ct. App. 1999), *trans. denied*.

Here, Zaragoza does not allege that the redacted portions are taken out of context. Rather, Zaragoza wished to admit the redacted portions to show that he really did not

---

[11] While arguing that Coffey should have been excluded as a witness, Zaragoza also suggests that the trial court abused its discretion by denying his motion to transport Coffey from prison so that he could call Coffey as a witness in his case-in-chief. Zaragoza fails to provide any cogent argument or citation to relevant authority. Accordingly, he has waived any such argument. *See, e.g.*, *Cooper v. State*, 854 N.E.2d 831, 834 n. 1 (Ind. 2006) (holding that the defendant's contention was waived because it was "supported neither by cogent argument nor citation to authority"); *see also* Ind. Appellate Rule 46(A)(8)(a).

trust Coffey. As Zaragoza does not present any other legal justification for the inclusion of the redacted portions of the call, we find that the trial court did not abuse its discretion in excluding the redacted portions of the telephone call.

For the foregoing reasons, the Court finds that the trial court did not commit reversible error on any of the above grounds.

Affirmed.

Crone, J., and Barnes, J., concur.