## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jul 12 2019, 7:51 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

David K. Payne
Braje, Nelson & Janes, LLP
Michigan City, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Samuel J. Dayton
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Justin D. Adney, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | July 12, 2019 <br><br> Court of Appeals Case No. <br> 19A-CR-14 <br><br> Appeal from the LaPorte Circuit Court <br><br> The Honorable Thomas J. Alevizos, Judge <br><br> Trial Court Cause No. <br> 46C01-1506-F1-521 |

**Mathias, Judge.**

[1]     Justin Adney ("Adney") was convicted in the LaPorte Circuit Court of Level 1 felony attempted rape, three counts of Level 3 felony rape, and Level 6 felony

strangulation. Adney received a 36-year sentence for attempted rape, three 14-year sentences for rape, and a two-year sentence for strangulation, each to be served concurrently with the Department of Correction. Adney now appeals, arguing that:

I. The trial court committed fundamental error by not admonishing the jury to disregard testimony regarding lie detection technology; and,

II. The trial court erred in its sentencing order by considering the circumstances of an aggravating factor outside the record.

We affirm.

## Facts and Procedural History

Adney had a sexual relationship with his victim, C.S., for approximately sixteen months prior to May 5, 2015, the date of the events leading to the convictions from which Adney now appeals. Tr. Vol. II, pp. 196, 199–200, 202–03. On that day, C.S. arrived at Adney's home and found him intoxicated. Tr. Vol. II, p. 216. They discussed the possibility that C.S. might personally loan to Adney $2,000. Tr. Vol. II, pp. 216–18.

C.S. and Adney then engaged in consensual sexual activity. Tr. Vol. II, p. 222. Adney became violent and C.S. withdrew her consent to the activity. Tr. Vol. II, pp. 224–26. Subsequently, Adney used force to prevent C.S. from leaving his home and raped her three separate times. Tr. Vol. II, pp. 226–37. C.S. struggled to avoid Adney's blows, and at one point, Adney wrapped his hands around her neck and squeezed. Tr. Vol. II, pp. 239, 244–45. C.S. escaped Adney's grip

and left the house under the guise of retrieving cash from her car to give as a loan to Adney, as they had discussed earlier. Tr. Vol. II, pp. 246–48.

[5] Instead, C.S. got in her car and drove away, first calling a friend to describe what had happened at Adney's house and then calling 911. Tr. Vol. II, p. 249; Tr. Vol. III, p. 3. A LaPorte County Sherriff's Department officer responded to C.S.'s home. Tr. Vol. III, p. 4. Shortly after the officer arrived, the officer transported C.S. to the hospital where she was examined by medical staff. Tr. Vol. III, pp. 5–8. C.S. was found to have bruises and marks on her face, throat, tailbone, wrists, and arms. Tr. Vol. III, pp. 12–17, 98, 141–42, 144–48. Blood vessels around her left eye were broken, and C.S. was found to have blood-tinged discharge from her genitals. Tr. Vol. III, pp. 142–44, 152. In the month following her rape, C.S. returned twice to the hospital for follow-up examinations. Tr. Vol. III, p. 18. C.S. testified that she continued to suffer the effects of the assault at the time of the August 2018 trial that led to Adney's convictions. Tr. Vol. III, pp. 19–20.

[6] On June 24, 2015, Adney was charged with one count of Level 1 felony attempted rape, three counts of Level 3 felony rape, and one count of Level 6 felony strangulation. Appellant's App. pp. 23–27. Adney was first tried in October 2017; after examination of the jury, the trial judge granted Adney's motion for mistrial due to juror misconduct. Appellant's App. pp. 67–72. A second jury trial was held on August 13 through August 16, 2018. Appellant's App. pp. 138–46. The jury found Adney guilty, and the trial court convicted

Adney of all charged offenses. Appellant's App. p. 145. Adney was sentenced on December 5, 2018, to 36 years for attempted rape, 14 years for each of the three counts of rape, and two years for strangulation, each to be served concurrently. Appellant's App. pp. 221–22. Adney filed a timely notice of appeal on January 4, 2019. Appellant's App. pp. 239–43.

## Discussion and Decision

[7] Adney's arguments rely on the fundamental error exception to the general rule that where a party fails to object to an alleged error at trial, the issue is waived on appeal. *Benson v. State*, 762 N.E.2d 748, 755 (Ind. 2002). Errors and defects in the proceedings that do not affect the substantial rights of parties are deemed harmless. *Camm v. State*, 908 N.E.2d 215, 228 (Ind. 2009); Ind. Trial Rule 61. A narrow exception is allowed for fundamental errors that so prejudice the rights of a defendant that refusal by a court to correct the error would be inconsistent with substantial justice. *Benson,* 762 N.E.2d at 755. Fundamental errors are those that constitute blatant violations of basic principles of due process, cause substantial harm or potential for harm, and result in the denial of due process for the defendant. *Ruggieri v. State*, 804 N.E.2d 859, 863 (Ind. Ct. App. 2004). If an error does not result in fundamental harm to a defendant's rights, it is judged to have no effect on the essential fairness of a trial, and thus a conviction may stand despite the presence of harmless error. *Durden v. State*, 99 N.E.3d 645, 652 (Ind. 2018).

### I. Failure to Admonish the Jury

Adney contends that fundamental error occurred when the State elicited testimony regarding polygraph test technology. Appellant's Br. p. 8. "In general, a reference to a polygraph examination without an agreement by both parties is inadmissible and grounds for error." *Glenn v. State*, 796 N.E.2d 322, 325 (Ind. Ct. App. 2003), *trans. denied*. The concern is that evidence of lie detection tests offered, refused, passed or failed will give rise to false inferences about a defendant's truthfulness. *Shriner v. State*, 829 N.E.2d 612, 619 (Ind. Ct. App. 2005). This can occur if the jury infers a defendant took and failed or refused to take a polygraph test when the State or a witness for the State introduces the subject. *Id.* Conversely, when the defendant refers to a polygraph test, the jury may infer he took and passed or was not offered a polygraph test. *Id.* Thus, without an agreement between the parties, such evidence is inadmissible because it can lead to erroneous inferences and have prejudicial effect on either party. *Id.*

If a reference to a polygraph examination is made, the prejudicial effect on either party may be sufficiently mitigated by a judicial admonishment of the jury. *Sherwood v. State*, 702 N.E.2d 694, 698 (Ind. 1998). Admonitions direct jurors to disregard the testimony because the underlying polygraph examination is inadmissible as evidence. *Myers v. State*, 887 N.E.2d 170, 191 (Ind. Ct. App. 2008), *trans. denied*. As we have previously explained, prejudicial impact on the

defendant may be further mitigated if the trial judge "articulate[s] to the jury the reasons that such evidence should not be considered." *Glenn*, 796 N.E.2d at 325. A specific admonishment that refers to the inherent unreliability of lie detection technology – though not a fail-safe – is an appropriate remedy. *Id.* at 326.

[10] Here, the State introduced the topic of lie detection technology during its direct examination of Detective Jennifer Rhine-Walker. Tr. Vol. II, p. 148. The State asked whether her department uses "lie detectors or voice stress analysis machines." *Id.* Rhine-Walker replied that the department does use the technology. *Id.* The State's follow-up questions and Rhine-Walker's responses then focused exclusively on why the department declines to use lie detection technology on victims of criminal offenses. *Id.* at 148–49. Rhine-Walker explained that policing best practices, federal policy, and the availability of other investigative techniques all contribute to why victims are not asked to submit to lie detection technology. *Id.*

[11] During cross examination, Adney's counsel continued the line of inquiry about general uses for lie detection technology:

> Q: Okay. And does your department use [voice stress analysis]?
>
> A: We use it mainly for employment, preemployment purposes. Occasionally in a criminal case.

Q: All right.

A: But not as a matter of routine.

Q: Your department does use it then, right?

A: Yes. We have it available to us.

Q: All right. And does your department use polygraphs?

A: No, not typically.

Q: So do you know of anyone, say within the last year, that has been offered a polygraph or a voice stress analysis that has been a suspect?

A: I don't know of any.

Tr. Vol. II, pp. 165–66.

[12] At no point did the State, Adney or Rhine-Walker refer to any particular instance of a polygraph test being offered to or taken by C.S. or Adney. The references to polygraph and voice stress analysis tests were about the relative appropriateness of their use for different purposes. Tr. Vol. II, pp. 148–49, 165–66. And from the totality of Rhine-Walker's testimony, the jury learned that the LaPorte County Sheriff's Department considers lie detection tests inappropriate in criminal investigations. Her testimony accomplished the same result as a jury admonishment would have: the jury learned that the technology is inherently

unreliable, rarely used and thus not a regular part of criminal investigations. The danger of the jury drawing false inferences about Adney's truthfulness was sufficiently mitigated by the detective's testimony and so the references to lie detection technology was harmless error.

## II. *Sentencing Determination*

[13] Adney also contends that the trial court erred during his sentencing hearing.[1] In accordance with section 35-38-1-8(a) of the Indiana Code, Adney was sentenced after a written presentence investigative report was prepared by a probation officer and considered by the sentencing court. Appellant's Conf. App. pp. 181–90. Presentence investigative reports are prepared to "ensure the court has before it all relevant information about the defendant's background" before sentencing. *Hulfachor v. State*, 813 N.E.2d 1204, 1207 (Ind. Ct. App. 2004). Should the report include any allegedly unreliable information upon which the trial court relies, the defendant must object to the inclusion of that information. *Id*. Failure to object results in waiver of the issue for appeal, the exception being where inclusion of the information constitutes fundamental error. *Phelps v. State*, 914 N.E. 2d 283, 290 (Ind. Ct. App. 2009).

---

[1] Though Adney's brief did not argue this error constituted fundamental error, we will nevertheless consider the issue as though it had been properly raised as an exception to Indiana Trial Rule 61, the harmless error rule.

[14]     Presentence investigative reports include individualized accounts of any aggravating or mitigating factors in the defendant's history that must be considered by the sentencing court. *Yates v. State*, 429 N.E.2d 992, 994. "Criminal activity that occurs subsequent to the offense for which one is being sentenced is a proper sentencing consideration." *Williams v. State*, 782 N.E.2d 1039, 1051 (Ind. Ct. App. 2003), *trans. denied.* In Adney's case, aggravating factors included his "significant criminal history," violation of the terms of his bond, and two arrests subsequent to the sentencing hearing. Appellant's App. pp. 221–22. The court found no mitigating factors. *Id.* at 222.

[15]     Accordingly, the trial court used the aggravating factors to enhance Adney's sentences individually. Tr. Vol. IV, p. 28. For Level 1 felony attempted rape, Adney received a 36-year sentence, above the statutory advisory of 30 years but below the maximum of 40 years. *Id.* For each count of Level 3 Rape, Adney received a 14-year sentence, above the statutory advisory of nine years but below the maximum of 16 years. *Id.* Finally, for Level 6 Felony Strangulation, Adney received a two-year sentence, above the statutory advisory of one year but below the maximum of two-and-a-half years. *Id.* The court ordered the sentences served concurrently. *Id.*

[16]     We will remand for resentencing where we cannot say with confidence that the trial court would have imposed the same sentence in the absence of the error.

*Pruitt v. State*, 78 N.E.3d 14, 22 (Ind Ct. App. 2017), *trans. denied*. Adney asks us to determine that the trial court fundamentally erred when it characterized one of the aggravating factors – a subsequent arrest and criminal charge – in the presentence investigative report as "rather violent." Tr. Vol. IV, p. 28. The trial court also referred to "very interesting photographs" accompanying the charge of domestic battery. *Id.* Had the trial court not referred to the subsequent arrest as violent, which it presumably gathered from the photographs, the fact that Adney had twice been arrested since the sentencing hearing would still remain as an aggravating factor. Accordingly, the error by the trial court was harmless and did not affect Adney's substantial rights.

## Conclusion

[17] While the trial court did not admonish the jury to disregard testimony about lie detection technology, that failure was at worst harmless error, as was the trial court's reference to circumstances of an aggravating factor outside the record during sentencing. Accordingly, we affirm.

May, J., and Brown, J., concur.